# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5293 | **DATE** | 12/7/2004 |
| **CASE TITLE** | Waldock, et al vs. MJ Select | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The Coglianese defendants' motion to dismiss is granted in part and denied in part. Plaintiff has until January 7, 2005 to file an amended complaint consistent with the Court's rulings in this case. Defendants have until February 4, 2005 to answer or otherwise plead.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 8 2004 | 190 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN H. WALDOCK, solely as Trustee )
of the John H. Waldock Trust, et al., )
 )
      Plaintiffs, )
 ) No. 03 C 5293
v. )
 )
M.J. SELECT GLOBAL, LTD., a Bahamian )
investment company now in Liquidation, et al., )
 )
      Defendants. )

**DOCKETED**
**DEC 0 8 2004**

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This is a securities fraud case involving allegations of a fraudulent investment scheme in connection with the purchase of shares in M.J. Select Global, Ltd. ("M.J. Select"), a Bahamian mutual fund. Michael Coglianese, Gina Coglianese, Michael Coglianese, C.P.A., P.C., Commodity Compliance Services, Inc., and GLC Services, Corporation have moved to dismiss Counts I, III, IV, VII, XI, XII and XIII of the FAC. As discussed in detail below, their motion is granted in part and denied in part.

## BACKGROUND

### I. The Plaintiffs

The Plaintiffs in this case all invested in M.J. Select, and lost all or substantial portions of their investments. Plaintiffs include: John H. Waldock, solely as Trustee of the John H. Waldock Trust; Mary Jane S. Hill and John E. Rosino, solely as Trustees of the Andrew W. Waldock Trust, John H. Waldock, Jr. Trust, Julia Wright Waldock Trust, Cameron Douglas Waldock Trust, Gary Phillip Liebenthal, II Trust, Samuel Louis Waldock Trust, Benjamin Nicholas

Waldock Trust, Dustin J. Houck Trust, Daniel R. Houck Trust, Erik J. VanDootingh Trust, Ian A.VanDootingh Trust, John H. Waldock, II Trust, Andrew W. Waldock, Jr. Trust, Christopher J. Waldock Trust; 766347 Ontario Ltd., a Canadian corporation; The James F. Boughner Foundation, a Canadian corporation; Ed Pettegrew, Sr., a citizen of Florida; David Miller a citizen of California, John A. Copeland, as Trustee under a trust agreement dated April 18, 1988; Jack C. Kenning and Barbara Straka-Kenning, citizens of Ohio; Robert M. Warner, Sr. individually and as beneficiary of Independent Trust Corporation Trust, for Adam Scott Warner and for Robert Warner, Account No. 263 in the name of Adam S. Warner and Account No. 264 in the name of Andrew Robert Warner; and George Lukas, a citizen of New Jersey. Collectively, Plaintiffs are referred to as the "Waldock Plaintiffs" or "Plaintiffs."

## II. The Coglianese Defendants

Plaintiffs have sued multiple Defendants, including Michael Coglianese, Gina Coglianese, Michael Coglianese, C.P.A., P.C., Commodity Compliance Services, Inc., and GLC Services, Corporation (collectively, the "Coglianese Defendants"). Michael Coglianese is an Illinois certified public accountant who lives and works in the Northern District of Illinois. Gina Coglianese is Michael Coglianese's wife. Michael Coglianese, C.P.A., P.C. is an Illinois professional corporation though which Michael Coglianese practices certified public accounting. Commodity Compliance Services, GLC Services, Corp. and CCS, Inc. are Illinois corporations. Gina Coglianese was a principal of Commodity Compliance Services, GLC Services and CCS.

Plaintiffs allege that Michael Coglianese instructed the organization of M.J Select. They allege that Coglianese, along with Martin James Allamian, promulgated offering memoranda that contained false misrepresentations regarding the safety of their investments. Instead, Plaintiffs

2

allege that Defendants funneled their investments through a series of foreign entities, and then illegally placed them into illiquid investments.

**III.     Alleged Scheme**

The Court has set forth the alleged fraudulent scheme in other opinions in this case and its related case, *Zurich Capital Markets Inc. v. Coglianese, et al.*, No. 03 C 7960, (the "ZCM Case"). The Court will not restate the facts in detail here. For a complete factual background, *see Waldock ex rel. John H. Waldock Trust v. M.J. Select Global, Ltd.*, 2004 WL 2278549 (N.D. Ill. Oct. 7, 2004) (the "October 7, 2004 Opinion"); *Zurich Capital Markets Inc. v. Coglianese, et al.*, No. 03 C 7960, 2004 WL 2191596 (N.D. Ill. Sept. 23, 2004) (the "September 23, 2004 Opinion"); and *Zurich Capital Markets Inc. v. Coglianese, et al.*, No. 03 C 7960, 2004 WL 1881782 (N.D. Ill. Aug. 2, 2004) (the "August 2, 2004 Opinion").

In essence, Plaintiffs allege that they lost approximately $9.8 million through a complex fraudulent investment scheme carried out by all the defendants in this case, including the Coglianese Defendants. They contend that Coglianese organized M.J. Select and directed the diversion of their investments into risky investments, contrary to the "market neutral" representations about M.J. Select. They further allege that the Coglianese Defendants provided accounting services to M.J. Select and thus knew the investment strategies and terms and conditions of the fund, as well as the funds where they diverted the investments. Plaintiffs allege that Coglianese received secret fees and commissions for his role in misappropriating Plaintiffs' investments in M.J. Select.

## ANALYSIS

I. **Federal Securities Fraud Claims**

   A. **Section 10(b) (Count I)**

Count I is premised on a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, 15 U.S.C. §78t-1. The Coglianese Defendants seek to dismiss it as untimely, failing to comply with pleading mandates, and failing to state a claim.

   1. **Statute of Repose**

The parties dispute the applicable statue of repose to this case[1]. Prior to the enactment of the Sarbanes-Oxley Act, 28 U.S.C. 1658(b), the statute of repose for a Section 10(b) claim was three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The Sarbanes-Oxley Act provides the limitations period for claims involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" is two years after the discovery of the facts constituting the violation and within five years after such violation. 28 U.S.C. § 1658(b).

This Court has recently held that the Sarbanes-Oxley Act does not apply retroactively to

---

[1] The Court applied in the five year statute of repose in its opinion in this case addressing the Oceanic Defendants' motion to dismiss. The Oceanic Defendants argued that the federal securities fraud claims failed under the 5 year period. In a footnote, the Oceanic Defendants stated that "to the extent a three year statute of repose exists, this provides further grounds for dismissal." (R.92-1, n.11.) The Court did not address this undeveloped argument. *Smith v. Northeastern Illinois University*, 388 F.3d 559, 569 (7th Cir. 2004) ("undeveloped argument constitutes waiver").

revive time-barred claims. *ZCM,* 2004 WL 2191596, at \*9. Thus, the Court must first determine if Plaintiffs' claims were time-barred as of July 30, 2002, the date Congress enacted the Sarbanes-Oxley Act. This determination requires the Court to decide when the "violation" occurred. In its October 7, 2004 Opinion, the Court held that the Section 10(b) and Rule 10b-5 "violation" for the purpose of the statute of repose occurs when the defendant makes the misrepresentation or omission in connection with the sale or purchase of a security to a particular plaintiff. *Waldock,* 2004 WL 2278549, at \*4. Accordingly, any "violations" that took place three years before July 30, 2002 – namely, before July 30, 1999 – are barred because they took place three years before Congress enacted the Sarbanes-Oxley Act.

Here, Plaintiffs allege that Defendant Coglianese made a misrepresentation or omission in connection with the sale or purchase of interests in M.J. Select on the following dates: July 29, 1997 as to John Waldock; August 28, 1997 as to Mary Jane Hill and John E. Rosino; October 1, 1997 as to 766347 Ontario Ltd. and the James Boughner Foundation; February 9, 1999 as to David Miller; May 1998 as to Ed Pettegrew, Sr.; June 28, 1999 as to Robert M. Warner, Sr.; and March 1996 as to George Lukas. (R.78-1, FAC ¶ 124.) All of these dates occurred more than three years before Congress enacted the Sarbanes-Oxley Act and were time-barred as of its enactment. Because these claims were barred as of July 30, 2002, Sarbanes-Oxley does not revive them with its five year statute of repose.

*Republic of Austria v. Altmann,* \_\_ U.S. \_\_, 124 S.Ct. 2240, 159 L.Ed. 2d 1 (2004), does not require otherwise. In *Altmann,* the Supreme Court addressed the retroactive application of the Foreign Sovereign Immunities Act of 1976 (the "FSIA") to conduct committed in 1948. The Supreme Court concluded that the FSIA applied retroactively to pre-enactment conduct. *Id.* at

5

2252. In reaching this conclusion, the *Altmann* court found that retroactive application was "consistent with two of the Act's principal purposes" and supported by its statutory construction. *Id.* The Supreme Court further emphasized "the narrowness of this holding." *Id.* at 2254.

The Supreme Court's reasoning does not require the retroactive application of the Sarbanes-Oxley Act to revive time-barred claims in this case. Indeed, the Supreme Court acknowledged that the "antiretroactivity presumption" was "most helpful" in cases such as this one which involve "private rights," because the "aim of the presumption is to avoid unnecessary post hoc changes to legal rules on which parties relied in shaping their primary conduct." *Id.* at 2252. In contract, "the principal purpose of foreign sovereign immunity has never been to permit foreign states and their instrumentalities to shape their conduct in reliance on the promise of future immunity from suit in United States courts." *Id.* The antiretroactivity presumption applies to this case.

Only two Section 10(b) and Rule 10b-5 claims remain in Count I based on the allegations in the FAC: August 14, 2000 as to John Copeland, and June 1, 2000 as to Jack C. Kenning and Barbara Straka-Kenning.[2] The Court will analyze the Coglianese Defendants' remaining arguments to dismiss Count I as to these Plaintiffs only.

### 2. PSLRA and Rule 9(b)

In order to state a claim for securities fraud under Section 10(b), Plaintiffs must allege that Defendants made (1) a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiffs justifiably

---

[2] Defendants state that Ed Pettegrew's claim also survives. Based on the allegations in the FAC, however, the violation occurred as to Pettegrew on May 1998 and is thus time-barred under the statute of repose.

6

relied; and (6) the reliance proximately caused Plaintiffs' damages. *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). The claim must meet the requirements of both the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA") and Rule 9(b).

"The PSLRA creates rules that judges must enforce at the outset of the litigation" *Asher v. Baxter Intern. Inc.*, 377 F.3d 727, 728 (7th Cir. 2004). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, [and] the reason why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Further, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud . . . with particularity." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d at 281. As the Seventh Circuit has explained, "this means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Defendants allege that the FAC does not allege what misstatements Coglianese made, or when, where and how he made them. Plaintiffs have alleged that Coglianese, along with Martin James Allamian, drafted the offering memorandum which contained false and misleading statements that M.J. Select would place its investments in a "market neutral" trading approach, that GAD would serve as the trading advisor, and that its investors would have 15 days to redeem their rights. Plaintiffs identify the statements in the offering memoranda that are allegedly false. These allegations meet the standards of Rule 9(b) and the PSLRA as to Michael Coglianese.

Plaintiffs have failed, however, to include any allegations regarding false statements or

7

omission made by Defendants Michael Coglianese, C.P.A., P.C., Commodity Compliance Services, Inc., and CCS, Inc. Accordingly, the Section 10(b) claim against these Defendants is dismissed without prejudice.

### 3. Duty to Disclose

It is clear that "silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b)" when there is "a duty to disclose aris[ing from] a relationship of trust and confidence between parties to a transaction." *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980). Coglianese argues that Plaintiffs have failed to identify any duty owed by Coglianese to the Plaintiffs, and thus fail to identify how any alleged nondisclosure violated the securities laws.

A duty to disclose may arise if "omitting particular facts makes some existing statement misleading." *Anderson v. Abbott Labs.*, 140 F.Supp.2d 894, 903 (N.D. Ill. 2001) (citing 17 C.F.R. § 240.10b-5). Indeed, "[i]f one speaks, he must speak the whole truth." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995). Plaintiffs allege that Coglianese made certain representations to Plaintiffs, and therefore had a duty to disclose the omitted information in order to make his statements not misleading. At this stage, these allegations are sufficient to survive a motion to dismiss. *See Friedman v. Rayovac Corp.*, 295 F.Supp.2d 957, 988 (W.D. Wis. 2003).

### 4. Scienter

The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Seventh Circuit has not yet addressed the pleading requirements for scienter under the

8

PSLRA. The Court has previously articulated that Plaintiffs are not limited in the type of facts they use to support scienter, as long the totality of the factual allegations give rise to a strong inference of scienter. *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F.Supp.2d 987, 998 (N.D. Ill. 2002). Such facts must support a strong inference of scienter as to each Defendant. *Johnson v. Tellabs, Inc.*, 303 F.Supp.2d 941, 953 (N.D. Ill. 2004).

As an initial matter, Plaintiffs have not made any allegations regarding the scienter of Michael Coglianese, C.P.A., P.C. Accordingly, Michael Coglianese, C.P.A. is dismissed from Count I without prejudice.

Plaintiffs allege that Coglianese knew that Plaintiffs' investments were intended to be misappropriated and diverted and were in fact misappropriated and diverted because he ordered the transfer of funds to Dominion and knew that the misappropriated funds were being invested in restricted Regulation D securities contrary to the liquidity requirement of the offering memorandum. They allege that Coglianese, his wife and Commodity Compliance Services performed accounting services for M.J. Select, GAD, and Dominion, and thus were fully aware of the conflicting terms and conditions of those investment vehicles.

Plaintiffs' allegations are insufficient to create a strong inference of scienter because they are largely conclusory and unsupported by factual allegations. Their allegations do not create a strong inference that *each* of the Coglianese Defendants acted with scienter. Accordingly, the Section 10(b) count is dismissed without prejudice regarding the remaining Plaintiffs' claims – John Copeland, Jack C. Kenning and Barbara Straka-Kenning.

**B.     Section 20(a)**

In order to allege a Section 20(a) claim, Plaintiffs must allege 1) a primary securities

violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). General control requires Plaintiffs to allege that the Coglianese Defendants "actually participated in, that is, exercised control over, the operations of [M.J. Select] in general." *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 614 (7th Cir.1996). Plaintiffs' allegations must comply with Rule 9(b)'s particularity mandates because their Section 20(a) claim is one of fraud.

Because Plaintiffs have failed to state a cause of action under Section 10(b), their Section 20(a) claim fails. Additionally, Plaintiffs have failed to allege with particularity that any of the Coglianese Defendants had actual control over the alleged fraudulent transactions. Their conclusory allegation that they "actually possessed the power or ability to control the specific transaction on which the Rule 10b-5 violation is predicated" fails to satisfy Rule 9(b)'s mandates. (R. 78-1, FAC ¶ 140.)

## II. RICO (Count IV)

Count IV is premised on an alleged violation of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1964(c). Plaintiffs seek to recover for alleged injuries arising from "the looting of M.J. Select Global, Ltd.." (R. 78-1, FAC, ¶ 173.)

Shareholders, however, "do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation. In other words, a RICO claim is a corporate asset, not an individual

10

one." *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990). Plaintiffs make clear that the "gravamen of the Count is not the sale of any securities, but rather the looting of M.J. Select Global, Ltd. and the misappropriation of its assets and funneling to Dominion in violation of the offering and contracts documents of M.J. Select Global, Ltd. for the purpose of generating secret commissions and fees payable at least to defendant Michael Coglianese, Sonic and GLC Services, Corp." (R. 78-1, FAC, ¶ 173.) Because Count IV only alleges RICO injuries suffered directly by the corporate entity MJ Select and only derivatively by Plaintiffs as shareholders, Plaintiffs do not have standing to bring it.

### III. Standing – State Law Claims

Defendants argue that Plaintiffs lack standing to prosecute claims arising from alleged third-party misconduct that injured MJ Select and all of its shareholders. They argue that Plaintiffs' injuries are indirect and derivative of the direct injuries allegedly incurred by M.J., and thus they cannot proceed under the Illinois shareholder standing rule. Based on this argument, the Coglianese Defendants seek to dismiss Counts VII (unjust enrichment), VIII (equitable accounting), XI (breach of fiduciary duty), XII (Conspiracy to Defraud), and XIII (accounting malpractice). Plaintiffs failed to address this argument regarding Counts VII, XII and XIII.

The shareholder standing rule "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Cashman v. Coopers and Lybrand*, 251 Ill.App.3d 730, 733, 623 N.E.2d 907, 909, 191 Ill.Dec. 317, 319 (1993) (citations omitted). Illinois recognizes two exceptions to this rule. First, if the shareholder's injuries are distinct from those of other

shareholders, the shareholder has standing to sue. *See Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir.1985). The mere diminution in the value of corporate assets, however, does not suffice to give the shareholder standing. *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1985). Second, if the defendant breached a duty owed directly to the shareholder, the shareholder can sue the defendant. *Mann v. Kempter Fin. Cos.*, 247 Ill.App.3d 966, 973, 187 Ill.Dec.726, 618 N.E.2d 317, 322 (1993). *See also Zokoych v. Spalding*, 36 Ill.App.3d 654, 663, 344 N.E.2d 805 (1976). Illinois courts strictly construe the shareholder standing rule, "allowing for very few exceptions." *Kush v. American States Insc. Co.*, 853 F.2d 1380, 1383 (7th Cir. 1988).

Plaintiffs fail to allege any injury that is unique to them, and they fail to allege a breach of any duty owed independently to them, as opposed to M.J. Select. Accordingly, counts VII, VIII, XI, XII and XII fail.[3] The Court dismisses them without prejudice.

---

[3] The Court hereby adopts this ruling regarding the other motions to dismiss upon which it has already ruled.

## CONCLUSION

The Coglianese Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs have 30 days to file a Second Amended Complaint.

Dated: December 7, 2004         ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge