IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN H. WALDOCK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 5293 |
| | ) | |
| v. | ) | |
| | ) | |
| M.J. SELECT GLOBAL, LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs have filed a Third Amended Complaint ("TAC") against multiple Defendants alleging a fraudulent investment scheme in connection with the purchase of shares of M.J. Select Global, Ltd. ("M.J. Select"), a Bahamian mutual fund. Plaintiffs have sued Defendants Southridge Capital Management, LLC ("Southridge"), Stephen M. Hicks and Daniel S. Pickett (collectively, the "Southridge Defendants"), and others for losses resulting from their investments in M.J. Select. The Southridge Defendants move to dismiss all of the federal and state claims against them for lack of personal jurisdiction and failure to state a claim.[1] The Court grants their motion and dismisses Plaintiffs' claims against the Southridge Defendants with prejudice.

**BACKGROUND**

This case is related to *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, (the

---

[1] The Southridge Defendants also state that they are moving to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. The Southridge Defendants, however, have not made any arguments challenging subject matter jurisdiction.

"ZCM Case"), also pending before the Court. The Court has addressed similar motions in that case. *See Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087 (N.D. Ill. 2004) (the "August 2, 2004 Opinion"); *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, 2004 WL 2191596 (N.D. Ill. Sept. 22, 2004) (the "September 22, 2004 Opinion"); and *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, 2005 WL 1950653 (N.D. Ill. August 12, 2005) (the "August 12, 2005 Opinion"). Although the ZCM case involves different plaintiffs and a different complaint, because many of the allegations are similar to the ones in this case and because both cases are based on investments in the same allegedly fraudulent scheme, the Court's reasoning in its August 2, 2004, September 22, 2004 and August 12, 2005 opinions applies equally to many of the issues in this case.

## I. The Plaintiffs

The Plaintiffs in this case all invested in M.J. Select and lost all or substantial portions of their investments. Plaintiffs include: John H. Waldock, solely as Trustee of the John H. Waldock Trust; Mary Jane S. Hill and John E. Rosino, solely as Trustees of the Andrew W. Waldock Trust, John H. Waldock, Jr. Trust, Julia Wright Waldock Trust, Cameron Douglas Waldock Trust, Gary Phillip Liebenthal, II Trust, Samuel Louis Waldock Trust, Benjamin Nicholas Waldock Trust, Dustin J. Houck Trust, Daniel R. Houck Trust, Erik J. VanDootingh Trust, Ian A. VanDootingh Trust, John H. Waldock, III Trust, Andrew W. Waldock, Jr. Trust, Christopher J. Waldock Trust; 766347 Ontario Ltd., a Canadian Corporation; the James Boughner Foundation, a Canadian corporation; Ed Pettegrew, Sr., a citizen of Florida; David Miller, a citizen of California; John A. Copeland, as Trustee under a trust agreement dated April 18, 1988; Jack C. Kenning and Barbara Straka-Kenning, citizens of Ohio; Robert M. Warner, Sr.

individually and as beneficiary of Independent Trust Corporation Trust, for Adam Scott Warner and for Andrew Robert Warner, Account No. 180 in the name of Robert Warner, Account No. 263 in the name of Adam S. Warner and Account No. 264 in the name of Andrew Robert Warner; and George Lukas, a citizen of New Jersey. Collectively, these individuals are referred to as "Plaintiffs." (R. 251-1; Third Am. Compl. at ¶¶ 16-45.)

## II. The Southridge Defendants

Plaintiffs have sued multiple Defendants, including the Southridge Defendants. Southridge is a Connecticut corporation with its principal place of business in Connecticut. Southridge is or was the organizer and sub-advisor of Dominion Capital Fund Limited ("Dominion"). (*Id*. at ¶ 88.)

Steven M. Hicks, a Connecticut resident, is one of the principals of Southridge and operates and administers Southridge and Dominion. (*Id*. at ¶ 89.) Daniel S. Pickett, a Wisconsin resident, was one of the principals of Southridge, and operated and administered Southridge and Dominion. (*Id*. at ¶ 90.)

## III. The Coglianese Defendants

Michael Coglianese ("Coglianese"), a citizen of Illinois, is an Illinois certified public accountant. (*Id*. at ¶ 62.) Michael Coglianese, C.P.A., P.C. is an Illinois professional corporation of which Coglianese is the president, officer, director and sole shareholder. (*Id*. at ¶ 63.) Gina Coglianese, a citizen of Illinois, is Coglianese's wife. (*Id*. at ¶ 64.)

Commodity Compliance Services, Inc. is an Illinois Corporation that acted through its individual agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS, Inc. and GLC Services, Inc. (*Id*. at ¶ 65.) CCS, Inc. is an Illinois corporation that acted through its

3

individual agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS, Inc. and GLC Services, Inc. (*Id*. at ¶ 66.)

GLC Services, Corp. is an Illinois corporation that acted through its individual agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS, Inc. and Commodity Compliance Services, Inc. (*Id*. at ¶ 67.)

## IV.  The Alleged Scheme[2]

Plaintiffs allege that Defendants participated in a complex scheme to defraud M.J. Select's investors. They contend that Defendants used false and misleading offering materials to induce Plaintiffs to invest in M.J. Select. (*Id*. at ¶ 9.) Plaintiffs allege that Defendants falsely represented that Plaintiffs' "investments would be invested in liquid investments and would be redeemable on fifteen days notice." (*Id*. at ¶ 10.) Plaintiffs further allege that M.J. Select transferred Plaintiffs' money to Global Arbitrage Development Ltd. ("GAD"), an illiquid investment fund. (*Id*. at ¶ 152.) GAD, in turn, allegedly used Plaintiffs' money to invest in Dominion, a fund that purchased illiquid securities. (*Id*. at ¶ 165(a).) Plaintiffs allege that Coglianese "was one of the primary organizers and operators of this fraudulent scheme" and that he acted as an agent for the Southridge Defendants when he was defrauding M.J. Select's investors. (R. 338-1; Pls.' Opp'n Dismissal Mot. Southridge Defs. at 103.) In total, Plaintiffs assert that they lost approximately $9.8 million through the allegedly fraudulent scheme. (Third Am. Compl. at ¶ 12.)

---

[2] For a more detailed discussion of the alleged scheme, *see* the August 2, 2004 and September 22, 2004 Opinions.

4

**ANALYSIS**

**I.      Legal Standards**

The Southridge Defendants bring their motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). A plaintiff need only make a prima facie showing that jurisdiction over a defendant is proper. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724-25 (7th Cir. 1994). In determining whether a plaintiff has met this burden, a court must resolve all factual disputes in the plaintiff's favor and may consider matters outside the pleadings. *See Purdue Research Found. v. Sanofi-Synthlabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would plaintiff's allegations entitle him or her to relief. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

**II.     Federal Law Claims**

Plaintiffs allege a number of federal law claims against the Southridge Defendants.

Specifically, Plaintiffs allege: (1) securities law violations pursuant to Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5; (2) violations of the Investment Company Act of 1940; and (3) control person liability under Section 20(a) of the Securities and Exchange Act of 1934 and Section 48(a) of the Investment Company Act of 1940. Each of these claims, with the exception of one of Plaintiffs' claims under the Investment Company Act of 1940, is premised on the actions of Coglianese. Plaintiffs claim that Coglianese's actions are imputed to the Southridge Defendants because Coglianese allegedly acted as an agent of the Southridge Defendants. (R. 338-1; Pls.' Opp'n Dismissal Mot. Southridge Defs. at 4-5.)

### A. Agency

An agency relationship results from the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[3] Rest. 2d Agency § 1. "[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant," plaintiff must plead agency with particularity. *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Furthermore, the Court has previously articulated that

> [t]he mere use of the label "agent" does not sufficiently establish an agency relationship in order to impose liability under Rule 9(b) or the PSLRA where the agency relationship and the fraud claims are intertwined. A plaintiff must plead facts showing the existence and scope of the agency relationship in order to establish primary liability under Section 10(b), especially where, as here, the agency relationship is not based on the classic corporation/employee model where a corporation can only act[] through its employees and agents.

---

[3]As was the case in *ZCM*, neither party has addressed whether the Court should look to the law of a certain state or federal common law to determine whether an agency relationship exists sufficient to impute an alleged 10b-5 violation to the principal. For the reasons set forth in the August 12, 2005 Opinion, the Court applies the law of agency expressed from the Restatement for purposes of deciding this motion. *ZCM*, 2005 WL 1950653, at *3 n.2.

*ZCM*, 332 F. Supp. 2d at 1106.

Plaintiffs allege that the Southridge Defendants had an agency relationship with Michael Coglianese, whereby the Southridge Defendants were principals and Coglianese was the agent. (R. 338-1; Pls.' Opp'n Dismissal Mot. Southridge Defs. at 6-9.)  According to Plaintiffs, the basis for this agency relationship is as follows: (1) Coglianese had entered into a fee sharing agreement ("Agreement") with the predecessor entity of Southridge, which plaintiffs allege Southridge honored; (2) the Southridge Defendants hired Coglianese as an "Affiliated Advisor"[4] to provide monthly accounting services; and (3) Southridge hired Coglianese "to perform consulting services as to the in-house computer accounting system."  (R. 251-1; Third Am. Compl. at ¶¶ 204, 240, 242.)

Plaintiffs' agency allegations rely on the same circumstances as are intertwined with their fraud allegations.  Specifically, Plaintiffs allege that Coglianese entered into the Agreement "in part because he controlled the flow of money and other assets from M.J. Select Global, Ltd. and was able to direct plaintiffs investment funds from M.J. Select Global, LTD., through GAD, into Dominion."  (*Id*. at ¶ 242.)  Plaintiffs also allege that Coglianese "negotiated, procured, arranged and requested" the Agreement so that he could "charge and receive illicit fees, incentives and other compensation as herein alleged."  (*Id*. at ¶ 212.)  Moreover, Plaintiffs rely on Coglianese's role as the Southridge Defendants' accountant to establish that Coglianese had the requisite scienter under 10b-5.  (*Id*. at ¶ 240.)  Because Plaintiffs' agency allegations are intertwined with their fraud allegations, Plaintiffs must plead agency with particularity.  *See Lachmund*, 191 F.3d

---

[4]Plaintiffs have alleged that a Southridge brochure stated that "Mr. Coglianese is an Affiliated Advisor of the firm and responsible for fund accounting for all firm products."  (R. 251-1; Third Am. Compl. at ¶ 239.)

7

at 783; *ZCM*, 332 F. Supp. 2d at 1106.

Plaintiffs have not adequately pled the existence and scope of Coglianese's alleged agency relationship with the Southridge Defendants as required under Rule 9(b). Plaintiffs allege that "Coglianese was delegated and granted the authority by Dominion, Southridge, Hicks and Pickett to procure investors for the funds operated by Southridge, Hicks and Pickett" and that the Southridge Defendants compensated Coglianese with a portion of the management fees for that referral work. (R. 251-1; Third Am. Compl. at ¶¶ 205, 207.) Plaintiffs, however, make no specific allegations regarding the scope of Coglianese's authority under the Agreement, nor do they allege that the Southridge Defendants have power under the Agreement to control Coglianese.[5]

Nor do Plaintiffs' allegations that Southridge hired Coglianese as an "Affiliated Advisor" to provide accounting services establish the existence of an agency relationship. Plaintiffs have not sufficiently pled the scope of Coglianese's authority as an accountant or whether the Southridge Defendants retained power or control over Coglianese. Because Plaintiffs have not sufficiently pled agency, Plaintiffs have not established that Coglianese was an agent for the Southridge Defendants.

---

[5] This case is distinguishable from *ZCM*, where the agreement in issue between ZCM and Coglianese stated that
> Coglianese was authorized to: (i) create or engage others to create the corporate entities for the feeder funds; (ii) manage or engage others to manage the day-to-day activities of the funds; (iii) promote the funds and actively solicit potential investors; and (iv) create offering memoranda and make other written and oral representations to potential investors . . . . [and the alleged principal] retained the right to direct the manner and method in which Coglianese performed each of these activities.

*ZCM*, 2005 WL 1950653, at *2 (citations omitted).

### B. Plaintiffs' Section 10(b) Claim For Securities Fraud

Count I is a securities fraud claim against the Southridge Defendants pursuant to Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. The "basic elements" of a Section 10(b) claim include: (1) a material misrepresentation or omission, (2) "scienter, *i.e.*, a wrongful state of mind," (3) a connection with the purchase or sale of a security, (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,'" (5) economic loss, and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, — U.S. —, 125 S. Ct. 1627, 1631, 161 L.E.2d 577 (2005).

Because Plaintiffs rely exclusively on a theory of agency to support their 10b-5 claim against the Southridge Defendants, and Plaintiffs have not adequately alleged the existence of an agency relationship, Plaintiffs fail to state a claim under 10b-5 against the Southridge Defendants. The Court, therefore, grants the Southridge Defendants' motion as to Plaintiffs' 10b-5 claim.

### C. Control Person Liability

Plaintiffs bring a claim under Section 20(a) of the Securities Exchange Act against the Southridge Defendants as controlling persons through the agency of Coglianese. (R. 251-1; Third Am. Compl. at ¶ 273(d).) In order to state a Section 20(a) claim, plaintiffs must allege the following: (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *See Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). Plaintiffs also allege control

person liability under Section 48(a) of the Investment Company Act of 1940. (R. 251-1; Third Am. Compl. at ¶ 313.)

Plaintiffs's control person liability claims rest on the Southridge Defendants' agency relationship with Michael Coglianese. They allege that the Southridge Defendants are liable as control persons only "through the agency of Michael Coglianese." (*Id*. at ¶ 273(d).) For the reasons discussed in Section IIA, Plaintiffs have not sufficiently alleged the existence of an agency relationship. Accordingly, their control person claims fail and the Court grants the Southridge Defendants' motion as to Plaintiffs' Section 20(a) and Section 48(a) claims.

### D. Investment Company Act of 1940

Counts II and II-A seek rescission and recovery of damages under an unjust enrichment theory pursuant to Section 47(b) of the Investment Company Act of 1940 ("ICA"). 15 U.S.C. §§ 80a-7, 80a-46, 80a-47. Section 7(d) of the ICA provides that

> No investment company, unless organized or otherwise created under the laws of the United States or of a State . . . shall make use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, to offer for sale, sell, or deliver after sale, in connection with a public offering, any security of which such company is the issuer.

15 U.S.C. §80a-7(d).

#### 1. Count II

Plaintiffs have repled Count II, which the Court dismissed on October 28, 2004. (R. 184-1; Oct. 28, 2004 Order.) Plaintiffs have not moved the Court to reconsider its earlier decision.[6]

---

[6] Plaintiffs state that they "replead Count II only to preserve it regarding its theory of aggregation . . . [o]therwise, they accept the Court's October 2004 ruling on the matter, and make no request for reconsideration." (R. 338-1; Pls.' Opp. Dismissal Mot. Southridge Defs. at 4.)

Therefore, for the reasons set forth in the Court's October 28, 2004 Order, the Court grants the Southridge Defendants' motion as to Count II.

### 2. Count II-A

Plaintiffs have added Count II-A to their TAC in an attempt to cure the pleading deficiencies of Count II. (R. 251-1; Third Am. Compl. at ¶¶ 311-325.) In their newly pled Count II-A, Plaintiffs allege that the Southridge Defendants are liable under the ICA because they were "acting through their agent Coglianese." (*Id*. at ¶ 324.) Because Plaintiffs base the Southridge Defendants' liability on Coglianese's purported agency, and the Court finds that Plaintiffs have not pled the existence of an agency relationship, the Court grants the Southridge Defendants' motion as to Count II-A.

## III. State Law Claims

Plaintiffs assert state law claims of conspiracy to defraud, common law fraud and violations of the Illinois Uniform Fraudulent Transfer Act ("FTA") against Southridge, and bring unjust enrichment and equitable accounting claims against Southridge, Hicks and Pickett. Plaintiffs have alleged diversity subject matter jurisdiction over these state law claims. (R. 251-1; Third Am. Compl. at ¶ 3.) The Southridge Defendants challenge whether the Court has personal jurisdiction over them with respect to Plaintiffs' state law claims.[7] Fed. R. Civ. P. 12(b)(2).

### A. Personal Jurisdiction Standards

Where the Court's subject matter jurisdiction is based on diversity of citizenship, as in

---

[7] Although the Southridge Defendants' motion only challenges personal jurisdiction regarding Plaintiffs' common law fraud and FTA claims, the Court's personal jurisdiction analysis applies to all of Plaintiffs' state law claims.

the present matter, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Any exercise of jurisdiction over a defendant must comport with state statutory law, state constitutional law, and federal constitutional law. *RAR*, 107 F.3d at 1276. The Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt*, 302 F.3d at 715. Moreover, the catch-all provision in the Illinois long-arm statute, 735 ILCS 5/2-209(c), allows courts "to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Accordingly, the Court may move directly to the federal constitutional inquiry, namely, whether exercising personal jurisdiction over the Southridge Defendants complies with federal due process protections. *See Hyatt*, 302 F.3d at 714-15.

The federal test for personal jurisdiction requires that the defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958).

A federal court's exercise of personal jurisdiction over a defendant may be either general or specific. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct.

1868, 1872-73, 80 L. Ed. 2d 404 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Id.* at 416, 104 S. Ct. at 1868. Specific jurisdiction exists when the "litigation arises out of or is related to [the defendant's contacts with the forum state]." *Logan Prods. v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996). Here, Plaintiffs only argue that specific jurisdiction exists. (R. 338-1; Pls.' Opp'n Dismissal Mot. Southridge Defs. at 10 n.8.)

### B. Personal Jurisdiction Analysis

Plaintiffs assert that the Court has jurisdiction over Southridge through the actions of its purported agent, Coglianese, and that the Court has jurisdiction over all of the Southridge Defendants as a result of their contacts with Illinois.[8]

### 1. Coglianese's Agency

Under the Illinois long-arm statute, non-residents can submit to the jurisdiction of an Illinois court through the acts of their agents. 735 ILCS 5/2-209(a). The party asserting the agency relationship bears the burden of showing the existence of an agency relationship. *Liberty Life Assurance Co. of Boston v. Savage*, No. 00 C 4117, 2001 WL 214204, at *3 (N.D. Ill. Mar. 2, 2001). Courts assessing whether agency allegations sufficiently confer personal jurisdiction over an out-of-state party have looked to whether the allegations establish that the purported agent had the authority to legally bind the principal and whether the principal could control the actions of the agent regarding the matters entrusted to the agent. *See id.* (holding that the court did not have personal jurisdiction over the alleged principal where plaintiff had not shown that

---

[8] Plaintiffs' support for their assertion that the Court has personal jurisdiction over the Southridge Defendants is contained only in the TAC, as Plaintiffs have not submitted any supplemental affidavits.

13

the purported agent had the authority to legally bind the purported principal or that the purported principal could control the purported agent); *Gen. Accident Ins. Co. of Am. v. Old Republic Int'l Corp.*, 648 F. Supp. 634, 637 (N.D. Ill. 1986) (holding that party was not agent of corporate entities and did not submit corporate entities to the jurisdiction of the court where corporate entities had no right to control party). Here, Plaintiffs have failed to allege that Coglianese had the authority to legally bind Southridge or that Southridge retained control over Coglianese's actions. Accordingly, Coglianese was not an agent of Southridge for purposes of submitting Southridge to the jurisdiction of the Court.

### 2. The Southridge Defendants' Actions

Plaintiffs are unable to establish that the Southridge Defendants had sufficient contacts with Illinois to satisfy federal due process standards. The federal test for personal jurisdiction requires that the defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158 (citations omitted). Plaintiffs allege that the Southridge Defendants made the following contacts with Illinois: (1) transferred funds to Coglianese, Gina Coglianese and GLC on at least two occasions; (2) hired Coglianese to perform certain accounting and computer consulting services for Southridge; (3) hired Gina Coglianese, Commodity Compliance Services, Inc. and CCS, Inc. to provide accounting services; and (4) had telephone, facsimile, courier, and e-mail correspondence with Gina Coglianese, Commodity Compliance Services, Inc. and CCS, Inc. regarding their accounting work.[9] (R.251-1, Third Am.

---

[9] The Court will not consider the Southridge Defendants' purported contacts with Illinois that are completely unrelated to Plaintiffs' causes of action, such as solicitations of Illinois investors for funds other than Dominion or the preparation of an annual audit report by an

Compl. at ¶¶ 88-90.) Plaintiffs also allege that Southridge and Hicks negotiated and entered into the Agreement with Coglianese. (*Id*. at ¶¶ 88(a), 89(a).)

In essence, Plaintiffs put forth two connections with Illinois – the Agreement with Coglianese and Illinois accountants. The fact that Coglianese, an Illinois resident, is a party to the Agreement does not establish sufficient contacts between the Southridge Defendants and Illinois to satisfy federal due process standards. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985) (stating in dicta that forming one contract with an individual from the forum state is not sufficient to subject the foreign party to the jurisdiction of the forum state). Instead, the Court must look to "prior negotiations and contemplated future consequences" to determine whether the Southridge Defendants purposefully established minimum contacts with Illinois. *See, id*. at 479, 105 S. Ct. at 2185. When the non-resident party does not initiate the transaction, that fact "militat[es] against personal jurisdiction." *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985). Here, the Southridge Defendants did not initiate the transaction. Plaintiffs allege that Coglianese "procured, arranged and requested" the Agreement. (R. 251-1; Third Am. Compl. at ¶ 212.) Also, Southridge was not initially a party to the Agreement; instead, "a predecessor entity to Southridge and Dominion" entered into the Agreement with Coglianese. (*Id*. at ¶ 88(a).) Moreover, the only performance of the Agreement by the Southridge Defendants

---

unrelated Chicago accounting firm. (*See* R. 251-1; Third Am. Compl. at ¶ 88(f),(i), 89(f), (h), 90(e), (g).) Under the Illinois long-arm statute, the cause of action must arise from the in-state activity. 735 ILCS 5/2-209(a); *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1275 (N.D. Ill. 1991). Additionally, Plaintiffs limit their arguments to specific jurisdiction. (R. 338-1; Pls.' Opp'n Dismissal Mot. Southridge Defs. at 10 n.8.) Specific jurisdiction is established only when the litigation arises out of the party's contacts with the forum state. *Logan Prods.*, 103 F.3d at 52.

in Illinois was the transfer of funds to Coglianese, Gina Coglianese and GLC on two separate occasions. (*Id*. at ¶¶ 88(b), 89(b), 90(a).) "[T]he mere act of sending payments to Illinois is insufficient to confer personal jurisdiction over non-resident corporations." *Gen. Accident Ins.*, 648 F. Supp. at 637. The Court does not find that the Southridge Defendants purposefully established minimum contacts with Illinois simply by upholding a contract that the Southridge Defendants did not solicit or enter into directly, and that did not require performance by the Southridge Defendants in Illinois, other than to make payments. *See Burger King*, 471 U.S. at 473-76, 105 S. Ct. at 2182-2184.

Nor do Plaintiffs' allegations regarding the provision of accounting services by citizens of Illinois, and correspondence related to that accounting work, establish sufficient contacts with Illinois to satisfy federal due process standards. Plaintiffs allege that the Southridge Defendants hired Coglianese, Gina Coglianese, Commodity Compliance Services, Inc. and CCS, Inc., all citizens of Illinois or Illinois Corporations, to perform certain accounting functions for Southridge. (R. 251-1; Third Am. Compl. at ¶¶ 88-90.) Plaintiffs further allege that the Southridge Defendants corresponded with their Illinois accountants by telephone, facsimile, courier, and e-mail. (*Id*. at ¶¶ 88(e), 89(e), 90(d).) The Southridge Defendants did not purposefully avail themselves of the privilege of conducting activities in Illinois and invoke the benefits and protection of the law of Illinois simply by hiring Illinois-based accountants. Hiring accountants in the forum state, without more, does not provide the Southridge Defendants with a connection to Illinois such that they "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). Because Plaintiffs have not pled adequate contacts between the Southridge

Defendants and Illinois to comply with federal due process standards, the Court dismisses Plaintiffs' state law claims against the Southridge Defendants.

**CONCLUSION**

For these reasons, the Southridge Defendants' motion to dismiss is granted. Plaintiffs have had four opportunities to plead their case against the Southridge Defendants. In its previous opinions, both in this case and in the ZCM case, the Court provided Plaintiffs with ample guidance regarding what they must plead to bring viable claims. After four tries, Plaintiffs have not cured their pleading deficiencies, even though they have had more than sufficient time and guidance to do so.

Rule 15(a) provides that a court should freely grant a party leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a). A court, however, need not provide plaintiffs with that opportunity if the court finds undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Here, Plaintiffs have had four opportunities to plead their case, and detailed notice of their pleading deficiencies. The Court also notes the tenuous connection of the Southridge Defendants to this case. Therefore, the Court dismisses Plaintiffs' claims against the Southridge Defendants with prejudice.

Dated: October 24, 2005                                  ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge