IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN H. WALDOCK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 5293 |
| | ) | |
| v. | ) | |
| | ) | |
| M.J. SELECT GLOBAL, LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs have filed a Third Amended Complaint ("TAC") against multiple Defendants alleging a fraudulent investment scheme in connection with the purchase of shares of M.J. Select Global, Ltd. ("M.J. Select"), a Bahamian mutual fund. Plaintiffs have sued Defendants Michael Coglianese and Michael Coglianese, C.P.A., P.C. (collectively, the "Coglianese Defendants"). Additionally, Plaintiffs have sued Gina Coglianese, Commodity Compliance Services, Inc., CCS, Inc., and GLC Services, Corp. (collectively, the "Gina Coglianese Defendants"), and others for losses resulting from their investments in M.J. Select. The Coglianese and Gina Coglianese Defendants move to dismiss all of the federal and state claims against them for failure to state a claim. As discussed below, their motions are granted in part and denied in part.

## BACKGROUND

### I.     Plaintiffs

Plaintiffs in this case invested in M.J. Select and lost all or substantial portions of their investments. Plaintiffs include: John H. Waldock, solely as Trustee of the John H. Waldock Trust; Mary Jane S. Hill and John E. Rosino, solely as Trustees of the Andrew W. Waldock

Trust, John H. Waldock, Jr. Trust, Julia Wright Waldock Trust, Cameron Douglas Waldock Trust, Gary Phillip Liebenthal, II Trust, Samuel Louis Waldock Trust, Benjamin Nicholas Waldock Trust, Dustin J. Houck Trust, Daniel R. Houck Trust, Erik J. VanDootingh Trust, Ian A. VanDootingh Trust, John H. Waldock, III Trust, Andrew W. Waldock, Jr. Trust, Christopher J. Waldock Trust; 766347 Ontario Ltd., a Canadian Corporation; the James Boughner Foundation, a Canadian corporation; Ed Pettegrew, Sr., a citizen of Florida; David Miller, a citizen of California; John A. Copeland, as Trustee under a trust agreement dated April 18, 1988; Jack C. Kenning and Barbara Straka-Kenning, citizens of Ohio; Robert M. Warner, Sr. individually and as beneficiary of Independent Trust Corporation Trust, for Adam Scott Warner and for Andrew Robert Warner, Account No. 180 in the name of Robert Warner, Account No. 263 in the name of Adam S. Warner and Account No. 264 in the name of Andrew Robert Warner; and George Lukas, a citizen of New Jersey. Collectively, these individuals are referred to as "Plaintiffs." (R. 251-1; TAC at ¶¶ 16-45.)

## II. The Coglianese Defendants

Michael Coglianese ("Coglianese"), a citizen of Illinois, is an Illinois certified public accountant. (*Id*. at ¶ 62.) Michael Coglianese, C.P.A., P.C. is an Illinois professional corporation of which Coglianese is the president, officer, director, agent, and sole shareholder. (*Id*. at ¶ 63.)

## III. The Gina Coglianese Defendants

Gina Coglianese, a citizen of Illinois, is Coglianese's wife. (*Id*. at ¶ 64.) Commodity Compliance Services, Inc. is an Illinois Corporation that acted through its individual agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS, Inc. and GLC Services, Corp. (*Id*. at ¶ 65.) CCS, Inc. ("CCS") is an Illinois corporation that acted through its individual

agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS and GLC Services, Corp. (*Id*. at ¶ 66.) GLC Services, Corp. ("GLC") is an Illinois corporation that acted through its individual agents, Coglianese and Gina Coglianese, and through its corporate agents, CCS and Commodity Compliance Services, Inc. (*Id*. at ¶ 67.)

## IV.    Other Relevant Parties

Sonic Investments, Ltd. ("Sonic"), a company organized under the laws of the Commonwealth of the Bahamas with its principal place of business in the Bahamas, deals with investments and the sale of investments for national and international investment funds. (*Id*. at ¶ 68.) Sonic acted through its individual agents, Coglianese and Gina Coglianese, and its corporate agents, CCS and GLC. (*Id*.) Global Arbitrage Development Limited ("GAD") is an open-end investment company/mutual fund that is not registered. (*Id*. at ¶ 80.) Southridge Capital Management, LLC ("Southridge") is a Connecticut corporation with its principal place of business in Connecticut. (*Id*. at ¶ 88.) Southridge is or was the organizer and sub-advisor of Dominion Capital Fund Limited ("Dominion"). (*Id*.) Dominion is an open-end investment company/mutual fund organized under the laws of the Commonwealth of the Bahamas with its principal place of business in the Bahamas. (*Id*. at ¶ 87.) Oceanic Bank and Trust Limited ("Oceanic") is a bank and trust company with its principal place of business in the Bahamas. (*Id*. at 47.) Oceanic transacted business in the United States through, among other things, its administration of M.J. Select. (*Id*.)

## V.    Alleged Scheme

The Court has set forth the alleged fraudulent scheme in other opinions in this case and its related case, *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, (the "ZCM Case").

The Court will not restate the facts in detail here. For a complete factual background, *see*
*Waldock v. M.J. Select Global, Ltd.*, No. 03-5239, 2004 WL 2278549 (N.D. Ill. Oct. 7, 2004)
(the "October 7, 2004 Opinion"); *Waldock v. M.J. Select Global, Ltd.*, No. 03-5239, 2005 WL
2737502 (N.D. Ill. Oct. 24, 2005) (the "October 24, 2005 Opinion"); *Zurich Capital Markets
Inc. v. Coglianese*, 388 F. Supp. 2d 847 (N.D. Ill. 2004) (the "September 23, 2004 Opinion");
and *Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087 (N.D. Ill. 2004) (the
"August 2, 2004 Opinion").

In essence, Plaintiffs allege that they lost approximately $9.8 million through a complex
fraudulent investment scheme carried out by all Defendants in this case, including the
Coglianese and Gina Coglianese Defendants. (R. 251-1; TAC at ¶ 12.) They contend that the
Coglianese and Gina Coglianese Defendants organized M.J. Select and directed the diversion of
their investments into risky investments, contrary to their "market neutral" representations about
M.J. Select. (*Id*. at ¶¶ 220-25, 277(c).) Specifically, Plaintiffs allege that, despite the
representations in the offering memoranda that M.J. Select followed a "market neutral" trading
approach, the Coglianese and Gina Coglianese Defendants directed the transfer of Plaintiffs'
money to GAD, an illiquid investment fund. (*Id*. at ¶¶ 152, 220-25.) GAD, in turn, allegedly
used Plaintiffs' money to invest in Dominion, a fund that purchased illiquid securities. (*Id*. at ¶
165(a).) Plaintiffs further allege that the Coglianese and Gina Coglianese Defendants provided
accounting services to M.J. Select, as well as the funds where they diverted the investments, and
thus knew the investment strategies and terms and conditions of those funds. (*Id*. at ¶¶ 236, 237,
240, 241.) Furthermore, Plaintiffs allege that the Coglianese Defendants, Gina Coglianese and
GLC received secret fees and commissions for their role in misappropriating Plaintiffs'
investments in M.J. Select. (*Id*. at ¶¶ 261, 265.)

**ANALYSIS**

## I.      Legal Standard

The Coglianese and Gina Coglianese Defendants bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor."  *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).  Dismissal is appropriate only where it appears beyond doubt that under no set of facts would plaintiff's allegations entitle him or her to relief.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

## II.      Federal Securities Fraud Claims – Count I

Count I is premised on a violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.  The Coglianese and Gina Coglianese Defendants seek to dismiss these claims as untimely, failing to comply with pleading mandates, and failing to state a claim.

### A.      Section 10(b)

#### 1.      Statute of Repose

In its December 7, 2004 Opinion, the Court held that all but two of Plaintiffs' Section 10(b) claims, pled in their First Amended Complaint, were time-barred under the applicable statute of repose.  (R. 190-1; Dec. 7, 2004 Op. at 6.)  Specifically, the Court found the following

5

claims timely: (1) the August 14, 2000 purchase as to John Copeland, and (2) the June 1, 2000 purchase as to Jack C. Kenning and Barbara Straka-Kenning. (*Id.*)

Plaintiffs reallege their time-barred claims in the TAC. The Coglianese and Gina Coglianese Defendants argue that the claims the Court dismissed as time-barred on December 7, 2004 remain time-barred. Plaintiffs essentially concede this point by stating "the timeliness of Count I – is obviously governed by this Court's December 7 Opinion and other rulings." (R. 333-1; Pls.' Opp'n Gina Coglianese Defs.' Mot. Dismiss at 2.) The Coglianese and Gina Coglianese Defendants' motions are granted as to their statute of repose arguments as they pertain to Count I, and the Court's December 7, 2004 Opinion stands. The Court will analyze the Coglianese and Gina Coglianese Defendants' remaining arguments to dismiss Count I as to Copeland, Kenning and Straka-Kenning only.

## 2.    PSLRA and Rule 9(b)

The "basic elements" of a Section 10(b) claim include: (1) a material misrepresentation or omission, (2) "scienter, *i.e.*, a wrongful state of mind," (3) a connection with the purchase or sale of a security, (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,'" (5) economic loss, and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, --- U.S. ----, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005) (citations omitted).

The strict pleading mandates of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, apply to Plaintiffs' complaint. "The PSLRA creates rules that judges must enforce at the outset of the litigation." *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 728 (2004). The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. §

78u-4(b)(1).  Further, a plaintiff must "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Additionally, the heightened pleading requirements of Rule 9(b) apply.  Fed. R. Civ. P.

9(b).  Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud . . . with

particularity."  *In re HealthCare Compare Corp. Sec. Litig*., 75 F.3d 276, 281 (7th Cir. 1996).  As

the Seventh Circuit has explained, "this means the who, what, when, where, and how: the first

paragraph of any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### 3.    Misstatements or Omissions

Defendants Gina Coglianese, Commodity Compliance Services, Inc., and CCS argue that

Count I fails to allege that they made any material misrepresentations or had any duty to disclose

certain information.[1]  In accordance with the PSLRA, Plaintiffs must "specify each statement

alleged to have been misleading, [and] the reason or reasons why the statement is misleading."

15 U.S.C. § 78u-4(b)(1).

As an initial matter, Plaintiffs argue that Federal Rule of Civil Procedure 12(g) precludes

Commodity Compliance Services, Inc. and CCS from attacking Count I on sufficiency grounds

because they did not do so in their prior motion to dismiss.  On December 7, 2004, the Court

addressed whether Plaintiffs had alleged that Commodity Compliance Services, Inc. and CCS

made false statements or omissions.  (R. 190-1; Dec. 7, 2004 Op. at 7-8.)  Because this issue was

previously before the Court, Rule 12(g) does not bar the Gina Coglianese Defendants from

contesting the sufficiency of Count I as it relates to Commodity Compliance Services, Inc. and

CCS.

---

[1] Plaintiffs have not alleged that GLC violated Section 10(b) of the Exchange Act.

Plaintiffs have alleged that Gina Coglianese, Commodity Compliance Services, Inc., and CCS drafted, revised and updated the performance track records of GAD and M.J. Select and included them in M.J. Select's offering documents, including the disclosure documents of June 1, 1997, June 10, 1999 and April 1, 2000. (R. 251-1; TAC at ¶¶ 222-24.) According to Plaintiffs, these offering documents were false and materially incomplete because they described M.J. Select's and GAD's profitable performance without disclosing that investments in M.J. Select and GAD were and would continue to be invested in illiquid securities. (*Id.*) Additionally, Plaintiffs have alleged that Gina Coglianese, Commodity Compliance Services, Inc. and CCS compiled and distributed to investors monthly account statements, which likewise failed to disclose that Plaintiffs' investments were and would continue to be invested in illiquid securities. (*Id.*)

The Gina Coglianese Defendants argue that these alleged omissions are not actionable because Plaintiffs have failed to allege a duty to disclose. A duty to disclose can arise "if omitting particular facts makes some existing statement misleading." *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001). Thus, "[i]f one speaks, he must speak the whole truth." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995). Plaintiffs have alleged that Gina Coglianese, Commodity Compliance Services, Inc., and CCS made representations to Plaintiffs through the performance track records that they included in the offering documents and the monthly account statements that they distributed to investors, and, therefore, had a duty to disclose the omitted information because such information was necessary to make those representations not misleading. These allegations are sufficient to survive a motion to dismiss.

### 4. Scienter

The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). As the Court has previously held, a plaintiff may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, as long as the allegations support a strong inference that the defendants acted recklessly or knowingly. *766347 Ontario Ltd. v. Zurich Capital Markets Inc.*, 249 F. Supp. 2d 974, 987 (N.D. Ill. 2003) (citations omitted). The allegations must support a strong inference of scienter as to each Defendant. *Johnson v. Tellabs, Inc.*, 303 F.Supp.2d 941, 953 (N.D. Ill. 2004).

### (a)    The Coglianese Defendants

The Coglianese Defendants argue that Plaintiffs' allegations do not create a strong inference that they acted with the required state of mind because their allegations consist only of unsupported conclusions. The Court disagrees. Plaintiffs have alleged that Coglianese prepared and disseminated false and materially incomplete offering memoranda and other marketing documents in connection with the purchase and sale of M.J. Select securities. (R. 251-1; TAC at ¶ 220.) Plaintiffs have further alleged that Coglianese knew that M.J. Select's assets were invested in illiquid funds and placed in high risk investments, contrary to specific provisions in M.J. Select's offering memoranda and other marketing documents. (*Id*. at ¶ 242.) Additionally, Plaintiffs assert that Coglianese knew or recklessly disregarded the falsity of the representations because he: (1) drafted the performance track records of GAD and M.J. Select, and compiled monthly financial and bank records for M.J. Select; (2) received copies of documents from Dominion indicating that Dominion was invested almost exclusively in illiquid "Reg D" securities; (3) controlled the transfer of funds from M.J. Select to Dominion, despite their conflicting terms and conditions; and (4) had a fee sharing agreement with Southridge and

Dominion.  (*Id*. at ¶¶ 220, 240(c), 282.)

Additionally, Plaintiffs allege that Coglianese's motivation to defraud Plaintiffs arose from the commissions and referral fees he stood to gain under the fee sharing agreement he had with Dominion and Southridge for transferring funds from M.J. Select to Dominion.  (*Id*. at ¶ 247.)  According to Plaintiffs, the fee sharing agreement further increased Coglianese's profits because he ordered Southridge to pay Sonic and GLC undisclosed commissions and referral fees for transfers of Plaintiffs' investments from M.J. Select to Dominion, and then transferred the funds from Sonic and GLC to himself.  (*Id*. at ¶¶ 242, 264, 265.)  These allegations meet the PSLRA mandates.

Plaintiffs have likewise pled sufficient allegations to create a strong inference that Michael Coglianese, C.P.A., P.C. acted with the required state of mind.  Plaintiffs allege that Michael Coglianese, C.P.A., P.C., acting through Coglianese: (1) drafted the performance track records of GAD and M.J. Select, and compiled monthly financial and bank records for M.J. Select; (2) received copies of documents from Dominion indicating that Dominion was invested almost exclusively in illiquid "Reg D" securities; (3) controlled the transfer of funds from M.J. Select to Dominion, despite their conflicting terms and conditions; and (4) ordered Southridge to pay commissions and referral fees to Sonic and GLC for transfers from M.J. Select to Dominion. (*Id*. at ¶ 221.)  These allegations meet the PSLRA mandates.  The Coglianese Defendants' motion, therefore, is denied as to Plaintiffs' Section 10(b) allegations.

### (b)    The Gina Coglianese Defendants

The Gina Coglianese Defendants also argue that Plaintiffs' scienter allegations are conclusory and insufficient to satisfy the mandates of the PSLRA.  The Court disagrees. Plaintiffs have alleged that Gina Coglianese "performed accounting services for M.J. Select

Global, Ltd., GAD and Dominion and therefore w[as] fully aware of the conflicting terms and conditions of those investment vehicles." (*Id*. at ¶ 282(d).) In support of these allegations, Plaintiffs have alleged that Gina Coglianese "knew that investors were promised that the investments [in M.J. Select] would be redeemable on 15 days written demand, and knew the fees and commissions that were disclosed" because she drafted the performance track records of GAD and M.J. Select and compiled monthly financial and bank records for M.J. Select. (*Id*. at ¶¶ 222, 246.) Plaintiffs have further alleged that Southridge and Dominion hired Gina Coglianese to provide clerical and accounting work. (*Id*. at ¶ 241.) In connection with that work, Plaintiffs contend that Southridge and Dominion delivered to Gina Coglianese documents indicating that "Dominion was invested almost exclusively in complicated 'Reg D' securities which were highly illiquid and contrary to the terms of the M.J. Select Global, Ltd. disclosure documents." (*Id*. at ¶ 241(c).)

Additionally, Plaintiffs have alleged that Gina Coglianese's motive to defraud them arose from the commissions she stood to receive from the transfer of investments from M.J. Select to Dominion. Specifically, Plaintiffs have asserted that Gina Coglianese ordered the transfer of commissions and referral fees, generated by the transfer of Plaintiffs' investments from M.J. Select to Dominion, into her personal accounts. (*Id*. at ¶¶ 222(c), 265.) When viewed in their entirety, Plaintiffs' allegations regarding Gina Coglianese's scienter meet the PSLRA mandates.

Plaintiffs' scienter allegations against Commodity Compliance Services, Inc. and CCS similarly create a strong inference of scienter. Plaintiffs have alleged that Commodity Compliance Services, Inc. and CCS knew of the conflicting terms and conditions of M.J. Select and Dominion because they drafted track records and compiled monthly financial and bank records for M.J. Select, and received documents indicating that Dominion invested in illiquid

securities while performing clerical and accounting work for Dominion.  (*Id*. at ¶¶ 223, 224, 241(c).)  Plaintiffs have further alleged that despite knowing that M.J. Select and Dominion had conflicting terms and conditions, Commodity Compliance Services, Inc. and CCS, acting through Coglianese, controlled "the transfer of funds from M.J. Select Global, Ltd. to GAD and Dominion and other investors."  (*Id*. at ¶¶ 223(b), 224(b).)  Plaintiffs' allegations satisfy their burden under the PSLRA.  Because Plaintiffs have pled sufficient facts alleging that the Gina Coglianese Defendants made misrepresentations or omissions and acted with the requisite scienter, the Gina Coglianese Defendants' motion is denied as to Plaintiffs' Section 10(b) claim.

## B.      Section 20(a)

In order to allege a Section 20(a) claim, Plaintiffs must allege 1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised."  *Harrison v. Dean Witter Reynolds, Inc*., 974 F.2d 873, 881 (7th Cir. 1992).  Plaintiffs' allegations must comply with Rule 9(b)'s particularity mandates because their Section 20(a) claim is one of fraud.

### 1.      The Coglianese Defendants

The Coglianese Defendants argue that the Court should dismiss Plaintiffs' Section 20(a) claim for failure to state a claim because Plaintiffs fail to: (1) state a Section 10(b) claim; and (2) allege particular facts showing that the Coglianese Defendants had control over the alleged fraudulent transaction.  The Coglianese Defendants do not challenge whether Plaintiffs have pled sufficient facts to establish "general control" under Section 20(a).  Because Plaintiffs have stated a Section 10(b) claim, the Coglianese Defendants' first argument fails.

The Coglianese Defendants' second argument, regarding "specific control," also fails. They incorrectly argue that Plaintiffs' Section 10(b) claim is predicated on "M.J. Select's alleged investments in GAD, GAD's alleged investments in Dominion, and Dominion's alleged investments in Regulation D securities." (R. 293-1; Coglianese Defs.' Mot. Dismiss at 7.) The allegedly false and materially incomplete prospectuses, other written marketing material and oral statements made in connection with the purchase and sale of M.J. Select securities form the basis for Plaintiffs' Section 10(b) claim. (R. 251-1; TAC at ¶ 9.)

Plaintiffs have sufficiently alleged that the Coglianese Defendants possessed the ability to control the statements made in M.J. Select's prospectuses and other marketing materials. Plaintiffs have alleged that Coglianese and Michael Coglianese, C.P.A., P.C., acting through Coglianese, "participated in the preparation and distribution of the offering memoranda and other solicitation and marketing materials." (*Id*. at ¶ 277(c).) Specifically, Plaintiffs have alleged that the Coglianese Defendants prepared charts of M.J. Select's performance records, which failed to reflect the fund's investment in illiquid securities. (*Id*. at ¶¶ 220(a), 221(a).) Plaintiffs have further alleged that the Coglianese Defendants created monthly account statements for distribution to investors, which likewise failed to disclose that Plaintiffs' investments were transferred to illiquid securities. (*Id*. at ¶¶ 220(b), 221(b).) These assertions sufficiently allege that the Coglianese Defendants had control over the specific activity upon which Plaintiffs predicate their Section 10(b) action. The Coglianese Defendants' motion, therefore, is denied as to Plaintiffs' Section 20(a) allegations.

### 2. The Gina Coglianese Defendants

The Gina Coglianese Defendants also challenge Plaintiffs' Section 20(a) control person liability claim. They contend that Plaintiffs fail to allege: (1) a primary securities violation; (2)

that they exercised general control; and (3) that they had the power or ability to control the specific transaction or activity upon which the primary violation was predicated. Because Plaintiffs have stated a Section 10(b) claim, the Gina Coglianese Defendants' first argument fails.

Regarding "general control" under Section 20(a), Plaintiffs must plead that the Gina Coglianese Defendants "actually participated in, that is, exercised control over, the operations of [M.J. Select] in general." *Harrison v. Dean Witter Reynolds, Inc*., 79 F.3d 609, 614-15 (7th Cir. 1996). Plaintiffs have alleged that Gina Coglianese drafted the performance track records and compiled monthly financial and bank records for M.J. Select.[2] (R. 251-1; TAC at ¶ 222.) In addition, Plaintiffs have conclusively alleged that Gina Coglianese was a "controlling person" of M.J. Select. (*Id*. at ¶ 277(a).) These allegations fail to allege that Gina Coglianese had general control over M.J. Select's operations. The Court, therefore, grants the Gina Coglianese Defendants' Section 20(a) claim as to Gina Coglianese.

Plaintiffs, however, have sufficiently pled that Commodity Compliance Services, Inc. and CCS had general control over M.J. Select's operations. According to the TAC, Commodity Compliance Services, Inc. and CCS possessed general control over M.J. Select by acting through Coglianese and Gina Coglianese. In the TAC, Plaintiffs have asserted, and the Gina Coglianese Defendants do not challenge, that Coglianese and Gina Coglianese acted as agents of Commodity Compliance Services, Inc. and CCS. (*Id*. at ¶¶ 63, 65, 66.) The Court accepts these

---

[2] Plaintiffs also allege that Gina Coglianese had general control over M.J. Select through Coglianese's actions. (*Id*. at ¶ 277(c).) In the TAC, however, Plaintiffs have not alleged that Coglianese was an agent for his wife. Accordingly, for purposes of deciding the Gina Coglianese Defendants' motion, the Court disregards allegations that Gina Coglianese acted through her husband.

uncontested agency allegations as true for purposes of resolving the Gina Coglianese

Defendants' motion. Plaintiffs have alleged that Commodity Compliance Services, Inc. and

CCS, acting through Coglianese,

> organized or caused the organization of M.J. Select Global, Ltd., provided the initial
> funds for its capitalization, controlled the hiring of accountants and other professionals,
> participated in the preparation and distribution of the offering memoranda and other
> solicitation and marking materials, controlled the disbursement of funds to and from the
> M.J. Select Global, Ltd. bank accounts, [and] controlled the operations of Falkirk, S.A.,
> and Pantiles, S.A., the initial corporate directors of M.J. Select Global, Ltd.

(*Id*. at 277(c).) Based on these allegations, Plaintiffs have sufficiently alleged that Commodity

Compliance Services, Inc. and CCS had general control over M.J. Select's operations.

Moreover, Plaintiffs have sufficiently alleged that Commodity Compliance Services, Inc.

and CCS possessed the power to control the specific activity upon which Plaintiffs' Section

10(b) claim is predicated. Commodity Compliance Services, Inc, and CCS, acting through

Coglianese and Gina Coglianese, prepared charts of M.J. Select's performance records and

compiled monthly financial and bank records for distribution to investors, which failed to

disclose that the investments in M.J. Select were invested in illiquid securities. (*Id*. at ¶¶ 223,

224.) Because these allegations satisfy the specific control element of Plaintiffs' Section 20(a)

claim, the Court denies the Gina Coglianese Defendants' motion to dismiss Plaintiffs' Section

20(a) claim as to Commodity Compliance Services, Inc. and CCS.

## III.     Investment Company Act of 1940 – Counts II and II-A

Counts II and II-A seek rescission and recovery of damages pursuant to Sections 7(d), 47

and 48(a) of the Investment Company Act of 1940 ("ICA"). 15 U.S.C. §§ 80a-7, 80a-46, 80a-

47. Section 7(d) of the ICA provides that

> No investment company, unless organized or otherwise created under the laws of the
> United States or of a State . . . shall make use of the mails or any means or

instrumentality of interstate commerce, directly or indirectly, to offer for sale, sell, or deliver after sale, in connection with a public offering, any security of which such company is the issuer.

15 U.S.C. §80a-7(d).

### A.    Count II

Plaintiffs have repled Count II, which the Court dismissed as to other Defendants, on October 28, 2004.  (R. 184-1; Oct. 28, 2004 Op.)  The Coglianese and Gina Coglianese Defendants move the Court to dismiss Count II under the ICA.[3]  Plaintiffs, however, argue that they are barred from attacking Count II because they did not contest this claim in their earlier motions to dismiss.  Because the Court has previously addressed and dismissed this specific claim in this case, the Court will allow these Defendants to challenge Count II.  For the reasons set forth in the Court's October 28, 2004 Order, which Plaintiffs concede apply here, the Court grants the Coglianese and Gina Coglianese Defendants' motion as to Count II.

### B.    Count II-A

Plaintiffs have added Count II-A to the TAC in an attempt to cure the pleading deficiencies of Count II.  (R. 251-1; TAC at ¶¶ 311-325.)  The Coglianese and Gina Coglianese Defendants raise two challenges to Count II-A: (1) Plaintiffs' ICA claims are time-barred, with

---

[3] The Gina Coglianese Defendants purport to adopt and incorporate the arguments set forth in the Coglianese Defendants' motion as follows: the Gina Coglianese Defendants adopt the arguments of the Coglianese Defendants as to Counts II, II-A, VII, VIII, XII, XII-A, XVI, XVII, and XVIII; Gina Coglianese additionally adopts the Coglianese Defendants' arguments as to Count XIII; CCS and Commodity Compliance Services, Inc. additionally adopt the Coglianese Defendants' arguments as to Counts XI and XIII; and GLC additionally adopts the Coglianese Defendants' arguments as to Count IV.  (R. 290-1; Gina Coglianese Defs.' Mot. Dismiss at 6.)  Plaintiffs argue that the Gina Coglianese Defendants' "failure to develop these arguments constitutes a waiver."  (R. 333-1; Pls.' Opp'n Gina Coglianese Defs.' Mot. Dismiss at 10.)  To the extent that the Coglianese Defendants' legal arguments apply equally to the Gina Coglianese Defendants, the Court will allow the Gina Coglianese Defendants to incorporate the Coglianese Defendants' arguments into their motion.

the exception of the claims of John Copeland, as Trustee, and Jack Kenning and Barbara Straka-Kenning, as co-trustees; and (2) Plaintiffs' ICA claims fail because Plaintiffs have failed to allege control person liability with sufficient particularity.  (R. 293-1; Coglianese Defs.' Mot. Dismiss at 9-10.)

### 1.  Statute of Repose

The Coglianese and Gina Coglianese Defendants argue, and Plaintiffs concede, that Plaintiffs' ICA claims are subject to the same timeliness requirements as Count I.  Indeed, federal courts addressing the issue of time limitations on private civil actions under the ICA "have uniformly applied the one-year/three-year limitations period for claims under the Securities Exchange Acts of 1933 and 1934."[4]  *Green v. Fund Asset Mgmt., L.P.*, 19 F. Supp. 2d 227, 232 (D.N.J. 1998).  In the Court's December 7, 2004 Opinion, the Court addressed whether Plaintiffs' Section 10(b) claims were time-barred under the statute of repose for such claims.  (R. 190-1; Dec. 7, 2004 Op. at 6.)  For the reasons set forth in the Court's December 7, 2004 Opinion, only the claims of Copeland, Kenning and Straka-Kenning remain.  Accordingly, the Court will analyze the Coglianese and Gina Coglianese Defendants' arguments to dismiss Count II-A only as to those Plaintiffs.

### 2.  Control Person Liability

---

[4] Prior to July 30, 2002, a plaintiff had to file a Section 10(b) action "within one year after the discovery of facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S. Ct. 2773, 2782, 115 L. Ed. 2d 321 (1991).  On July 30, 2002, Congress enacted the Sarbanes-Oxley Act and expanded the limitations period for such claims involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" to two years after the discovery of the facts constituting the violation and within five years after such violation.  Sarbanes-Oxley Act of 2002, 28 U.S.C. 1658(b).  Because Sarbanes-Oxley does not apply retroactively to revive time-barred claims, it does not revive Plaintiffs' claims that were barred as of July 30, 2002.  *See Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005).

Under the ICA, "[i]t shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C.A. § 80a-47(a). The Coglianese and Gina Coglianese Defendants argue that Plaintiffs have failed allege with particularity control person liability under the ICA. They, however, fail to develop their argument with any factual or legal analysis. The Coglianese and Gina Coglianese Defendants rely exclusively on the conclusion that Plaintiffs have not alleged with particularity that they "caused other parties to offer for sale, sell, or deliver shares of M.J. Select." (R. 293-1; Coglianese Defs.' Mot. Dismiss at 10.) Without more, the Coglianese and Gina Coglianese Defendants' undeveloped argument is waived. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

Additionally, for the first time in their reply, the Coglianese and Gina Coglianese Defendants argue that "the plain meaning of Section 48(a) does not give Plaintiffs the right to bring a cause of action or seek relief under that section." (R. 343-1; Coglianese Defs.' Reply Br. at 8.) Arguments raised for the first time in a reply, however, are waived. *Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003). Accordingly, the Coglianese and Gina Coglianese Defendants have waived this argument.

## IV. Illinois Securities Law – Count III

Count III alleges that the Coglianese Defendants violated the Illinois Securities Law of 1953 (the "Act"), 815 ILCS 5/12 & 5/13 (2002). The Coglianese Defendants raise three challenges to Plaintiffs' claims under the Act: (1) none of the Plaintiffs gave timely notice of rescission; (2) Plaintiffs fail to allege with particularity that the Coglianese Defendants sold or participated in selling M.J. Select securities; and (3) the statute of repose bars some of Plaintiffs'

claims.

## A.     Timely Notice of Rescission

The Coglianese Defendants contend that Plaintiffs failed to provide timely notice as required under the Act.  Under the Act, a plaintiff must give notice of election to void and rescind their purchase or sale of securities within six months after they have knowledge that the purchase or sale is voidable.  815 ILCS 5/13(B).  "The six month rule regarding notice is not a statute of limitations, but rather, an equitable feature built into the statute to protect against stale claims.  Its purpose is to prevent purchasers, who have sufficient knowledge of the remedy available to them, from waiting the entire statute of limitations to decide whether to elect recision."  *Martin v. Orvis Bros. & Co.*, 25 Ill. App. 3d 238, 246, 323 N.E.2d 73, 79 (1st Dist. 1974) (citations omitted).  *See also Jacks v. Schneider Sec., Inc.*, 217 F.3d 525, 527 (7th Cir. 2000).  The six month rescission period does not begin to run when "an investor might know of facts that would void his security purchase."  *Hidell v. Int'l Diversified Invs.*, 520 F.2d 529, 539 (7th Cir. 1975).  The rescission period begins to run, instead, when the investor "learns, possibly from his attorney, that those facts might have such a legal consequence."  *Id*.

The Coglianese Defendants argue, without the benefit of supporting case law, that Plaintiffs learned that sales of M.J. Select securities were voidable on September 7, 2001, the date M.J. Select announced its liquidation and filed its Petition for Winding Up in the Supreme Court of the Bahamas.  Although Plaintiffs may have known about the liquidation in September 2001, and, therefore, may have been aware of facts upon which they are basing their current claims, it does not follow that Plaintiffs necessarily knew that their purchases of M.J. Select securities were voidable.  *See Hidell*, 520 F.2d at 539.  Therefore, the Coglianese Defendants have not established that the six month rescission period ended on March 7, 2002 (six months

after the September 7, 2001 liquidation announcement).

Plaintiffs concede that Plaintiffs David Miller, Ed Pettegrew, Sr., John A. Copeland, as Trustee under a trust agreement dated April 18, 1988, Jack C. Kenning, Robert M. Warner, individually and as beneficiary of Independent Trust Corporation Trust, for Adam Scott and for Andrew Robert Warner, and George Lukas provided untimely notice of election to rescind. Accordingly, Count III is dismissed as to these Plaintiffs. As to the other Plaintiffs, the Coglianese Defendants have failed to establish that they did not give timely notice of rescission.

### B.      Sufficiency of Pleadings

The Coglianese Defendants argue that Plaintiffs fail to "allege with particularity that Coglianese or Coglianese CPA sold securities, or participated or aided in any way in the making of the sale of securities." (R. 293-1; Coglianese Defs.' Mot. Dismiss at 12.) The Act imposes joint and several liability on "the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made." 815 ILCS 5/13(A). Plaintiffs have alleged that the Coglianese Defendants were involved with organizing M.J. Select, participated in preparing and distributing the offering memoranda and other marketing materials, and controlled the transfer of funds to and from M.J. Select. (R. 251-1; TAC at ¶ 277(c).) Viewing these allegations in the light most favorable to Plaintiffs and drawing all possible inferences from these allegations in Plaintiffs' favor, as the Court must, Plaintiffs have sufficiently alleged that the sales Plaintiffs now seek to rescind were made "on behalf of" the Coglianese Defendants. Accordingly, Plaintiffs' allegations are sufficient to support a claim under the Act.

### C.      Statute of Repose

Plaintiffs, the Coglianese Defendants and the Gina Coglianese Defendants agree that the limitations period for rescission under the Act is five years. Any purchases made before July 30,

1998 are therefore time-barred.

The Coglianese and Gina Coglianese Defendants argue for the first time in their reply that "this Court should hold that the Illinois Securities Law's five-year statute of repose bars *all* claims, whether based on purchases before or after the July 30, 1998 repose bar date, of Plaintiffs who purchased MJ Select shares before the repose bar date." (R. 343-1; Coglianese Defs.' Reply Br. at 9) (emphasis in original). As stated above, arguments raised for the first time in a reply are waived. *See Luellen*, 350 F.3d at 612 n.4. Accordingly, the Coglianese and Gina Coglianese Defendants have waived this argument.

## V.    RICO – Count IV

Plaintiffs have alleged that Coglianese, GLC and Sonic violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). According to Plaintiffs, "[t]he gravamen of this Count is not the sale of any securities, but rather the looting of M.J. Select Global, Ltd. and the misappropriation of its assets and funneling to Dominion in violation of the offering and contract documents of M.J. Select Global, Ltd. for the purpose of generating secret commissions and fees payable at least to defendant Michael Coglianese, Sonic and GLC Services, Corp." (R. 251-1; TAC at ¶ 338.) The Coglianese and Gina Coglianese Defendants argue that Plaintiffs do not have standing to bring their RICO claim because Plaintiffs have not alleged a RICO injury that is unique to them. The Coglianese and Gina Coglianese Defendants rely on the December 7, 2004 Opinion, which cited *Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990), for the proposition that shareholders

> do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation. In other words, a RICO claim is a corporate asset, not an individual one.

*Sears*, 912 F.2d at 892. Plaintiffs respond that they have standing because they have alleged that

Defendants operated M.J. Select as a de facto partnership, and, under *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996), the shareholder standing rule does not apply to partnerships.

The Court does not agree with Plaintiffs' broad interpretation of *Gagan*, or with Plaintiffs' attempt to extend *Gagan* to this case. In *Gagan*, the Seventh Circuit held that Gagan, a limited partner, had standing to recover on a RICO claim where Gagan, "not the limited partnership, was injured by the conspiracy to sell the limited partnership's assets and divert the proceeds from the sale" and "the limited partnership's assets were sold and the partnership dissolved at the time Gagan brought suit." *Gagan*, 77 F.3d at 960. The Seventh Circuit found that under these circumstances, precluding Gagan from bringing his RICO claim would not serve the policy behind the shareholder standing rule, which is "to prevent individuals from securing a double recovery – one directly as an individual and another indirectly as a shareholder of the corporation." *Id.* at 959.

This case is distinguishable from *Gagan*. Plaintiffs have not alleged a direct RICO injury. Indeed, Plaintiffs have conspicuously alleged the opposite. They have alleged that the basis for their RICO claim is "the looting of M.J. Select Global, Ltd. and the misappropriation of its assets." (R. 251-1; TAC at ¶ 338.) Therefore, even if M.J. Select did not, as Plaintiffs allege, observe corporate formalities, this case would not fit within the *Gagan* framework. Accordingly, Plaintiffs do not have standing to bring their RICO claims, and the Coglianese and Gina Coglianese Defendants' motion is granted as to Count IV.

## VI.    State Law Claims[5]

---

[5] The Coglianese and Gina Coglianese Defendants' request that the Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to Plaintiffs' state law claims is denied.

## A.    Standing

On December 7, 2004, the Court dismissed a number of Plaintiffs' state law claims on the basis that Plaintiffs did not have standing to bring them.[6]  (R. 190-1; Dec. 7, 2004 Op. at 11-12.) The Coglianese and Gina Coglianese Defendants argue that the TAC does not cure the defects of Plaintiffs' previously dismissed Counts and that Plaintiffs lack standing to prosecute Counts VII (unjust enrichment), VIII (equitable accounting), IX-A (intentional interference with contract), XI (breach of fiduciary duty), XII (conspiracy to defraud), XII-A (common law fraud), XIII (accounting malpractice), and XVI, XVII and XVIII (Illinois Uniform Transfer Act violations). According to the Coglianese and Gina Coglianese Defendants, Plaintiffs lack standing to prosecute their remaining state law claims under the Illinois shareholder standing rule because Plaintiffs' injuries are indirect and derivative of the direct injuries allegedly incurred by M.J. Select.[7]  The shareholder standing rule "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment."  *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 733, 191 Ill. Dec. 317, 319, 623 N.E.2d 907, 909 (2d Dist. 1993) (citations omitted).

Plaintiffs respond that they have standing to bring their state law claims under the

---

[6] Specifically, the Court dismissed Counts VII (unjust enrichment), VIII (equitable accounting), XI (breach of fiduciary duty), XII (conspiracy to defraud), and XIII (accounting malpractice) for lack of standing.  (R. 190-1; Dec. 7, 2004 Op. at 11-12.)

[7] The Coglianese and Gina Coglianese Defendants only contest standing on the basis of the shareholder standing rule.  They do not address Plaintiffs' argument based on the doctrine of *in pari delicto*.

doctrine of *in pari delicto*.[8]  The doctrine of *in pari delicto* means "[e]qually at fault."  Blacks

Law Dictionary 794 (7th ed. 1999).  This doctrine embodies the principal "that the wrongdoer

must not be allowed to profit from his wrong by recovering property that he had parted with in

order to thwart his creditors."  *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995).  A

corporation involved in a fraud, therefore, is not allowed to sue its fellow tortfeasors for losses

incurred as a result of the fraud.  Moreover, when a corporation is used as an instrument to

defraud shareholders, the shareholders' injuries are direct because they were the target of the

fraudulent scheme.  *See Apostolou v. Fisher*, 188 B.R. 958, 973 (N.D. Ill. 1995), *aff'd in relevant

part*, 155 F.3d 876, 880-82 (7th Cir. 1998).   That is true even if the corporation itself is arguably

injured by the fraud. *Id*.  Therefore, when a corporation acts *in pari delicto*, shareholders have

standing to sue the third parties who injured them.  *Id*.

The doctrine of *in pari delicto*, however, "loses its sting when the person who is *in pari

delicto* is eliminated."  *Lehmann*, 56 F.3d at 754.  In *Lehmann*, the Seventh Circuit found that

when the Securities and Exchange Commission ("SEC") removed the wrongdoer, who had

controlled the corporation and caused it to be a part of the fraud, and replaced the wrongdoer

with a receiver, the corporation was no longer the wrongdoer's "evil zombie[]."  *Id*.  The

Seventh Circuit then held that the corporation had standing to seek the return of money for the

benefit of the investors.  *Id*.

---

[8] Additionally, Plaintiffs argue that they have standing to bring Count XIII, their
accounting malpractice claim, under the accountant "privity statute," 225 ILCS 450/30.1(2).
Because Plaintiffs have standing to pursue their state law claims, *see* analysis below, the Court
need not address Plaintiffs' privity argument.  Nor must the Court address Plaintiffs' argument,
set forth in their supplemental opposition to Defendants' dismissal motions, that they have
standing under *LaRochelle v. Allamian*, No. 2-03-1383, 2005 WL 2436345 (Ill. App. Ct. Sept.
21, 2005).

Plaintiffs argue that M.J. Select is a "joint tortfeasor," and "was one of the vessels, instrumentalities and actors in this fraud." (R. 334-1; Pls.' Opp. Coglianese Defs.' Mot. Dismiss at 9-10.) Although Plaintiffs have not incorporated those specific terms in their TAC, Plaintiffs have referenced the *in pari delicto* doctrine and have alleged that Defendants failed to operate M.J. Select as a corporation and maintain an arm's length relationship with M.J. Select in the TAC. (R. 251-1; TAC at ¶¶ 60, 134-48.) Plaintiffs further argue that because M.J. Select is in equal fault with the other Defendants, M.J. Select cannot pursue lawsuits against the other Defendants, and any injuries caused by the alleged fraud are theirs to pursue.

Moreover, it is not clear that the doctrine of *in pari delicto* loses its sting in this case, as it did in *Lehmann*. M.J. Select is currently pursuing claims against Defendants in the Bahamas. (*Id*. at ¶ 60.) Plaintiffs have indicated, however, that the Liquidators pursuing M.J. Select's claims are not independent from Defendants, in contrast to the independent receiver in *Lehmann* that the SEC appointed. Specifically, Plaintiffs have alleged that

> defendants Oceanic, Rahming, Clowes, Falkirk, S.A. and Pantiles, S.A., who pursuant to a prearranged understanding or agreement obtained the appointment of the Liquidators in the Supreme Court of the Bahamas, and notwithstanding the clear liability of those defendants, the Liquidators have not taken action to obtain relief from those defendants, pursuant to an informal or other understanding or agreement, or because of legal defenses that those defendants might have, including but not limited to *in pari delicto*.

(*Id*.)[9] Viewing the TAC in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged that M.J. Select acted in equal fault with the other Defendants. Therefore, Plaintiffs have standing to bring their state law claims against the Coglianese and Gina Coglianese Defendants.

---

[9] In contrast to Plaintiffs' allegations, the Coglianese and Gina Coglianese Defendants argue that the Bahamian courts appointed a Liquidator for M.J. Select, and that the Liquidator sued Oceanic. (R. 293-1; Coglianese Defs.' Mot. Dismiss at 22.) At this point, the Court must take as true Plaintiffs' factual allegations.

The Coglianese and Gina Coglianese Defendants only challenge Counts VII, VIII, IX-A, XII, and XII-A on the ground that Plaintiffs allegedly lack standing. Because Plaintiffs have standing to bring these claims, the Coglianese and Gina Coglianese Defendants' motion is denied as to these counts.

### B. Breach of Fiduciary Duty – Count XI

Plaintiffs have alleged that Coglianese and Commodity Compliance Services, Inc. breached their fiduciary duties to Plaintiffs. (R. 251-1; TAC at ¶ 444.) The Coglianese and Gina Coglianese Defendants argue that Coglianese and Commodity Compliance Services, Inc. could not have breached any fiduciary duties, because no such duties existed.

A fiduciary relationship may arise as a matter of law by virtue of the relationship between the parties, such as an attorney-client relationship or a guardian-ward relationship. *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). It may also arise on an *ad hoc* basis. *Id*. A fiduciary relationship arises on an *ad hoc* basis "only if 'one person has reposed trust and confidence in another who thereby gains influence and superiority over the other.'" *Id*. (citing *Amendola v. Bayer*, 907 F.2d 760, 763 (7th Cir. 1990)). In this case, the relationship between Plaintiffs and Coglianese and Commodity Compliance Services, Inc. is not a fiduciary relationship as a matter of law. *See Burdett*, 957 F.2d at 1381. Furthermore, Plaintiffs have not alleged sufficient facts to impose a fiduciary duty on an *ad hoc* basis. Plaintiffs have alleged only that Coglianese "in fact exercised control over plaintiffs['] investments in the Fund and ordered and implemented the transfers of assets and funds pursuant to the operation of the Fund, including but not limited to the misappropriations and other wrongful disposition of funds alleged herein." (R. 251-1; TAC at ¶ 443(4).) Plaintiffs have failed to plead any facts alleging that they placed their trust and confidence in Coglianese and Commodity Compliance Services,

Inc., which is an essential component of a fiduciary relationship.[10]  *See Burdett*, 957 F.2d at

1381.  Accordingly, the Coglianese and Gina Coglianese Defendants' motion is granted as to

Plaintiffs' breach of fiduciary duty claim.


### C. Accounting Malpractice – Count XIII

Plaintiffs have alleged an accounting malpractice claim against Coglianese, Michael

Coglianese, C.P.A., P.C., Gina Coglianese, Commodity Compliance Services, Inc., and CCS.

The Coglianese and Gina Coglianese Defendants argue that the applicable five-year statute of

repose bars all of Plaintiffs' claims, with the exception of the claims of Copeland, Kenning and

Straka-Kenning.  The Illinois Public Accounting Act states that no action shall "be brought more

than 5 years after the date on which occurred the act or omission alleged in such action to have

been the cause of injury to the person bringing such action against a public accountant."  735

ILCS 5/13-214.2(b).  As stated in the August 2, 2004 Opinion, "the statute of limitations for

Illinois tort claims accrues on an 'injury-by-injury' basis, not a 'defendant-by-defendant' basis."

*ZCM*, 332 F. Supp. 2d at 1117 (citing *Whitlock Corp. v. Deloitte & Touche, L.L.P.*, 233 F.3d

1063, 1065-66 (7th Cir. 2000)).

The Coglianese and Gina Coglianese Defendants argue that the five-year limitations

period commenced when Plaintiffs invested in M.J. Select.  In support of this assertion, they

argue that their "acts and omissions" were the allegedly false and materially incomplete offering

---

[10] This case is distinguishable from the ZCM case, where plaintiffs alleged, in support of their claim that Coglianese owed them a fiduciary duty, "that they placed trust and confidence in Coglianese based on the assignment confirmations he signed as an independent accountant. They relied on the integrity of accounting statements he allegedly prepared.  Plaintiffs allege that Coglianese essentially controlled their assets given his role with M.J. Select."  *ZCM*, 332 F. Supp. 2d at 1120.

documents and reports that injured Plaintiffs by inducing them to invest in M.J. Select. Plaintiffs, however, have alleged that they were injured by the Coglianese and Gina Coglianese Defendants' allegedly false and materially incomplete monthly reports and calculations, which not only caused them to invest in M.J. Select, but also influenced them to invest additional sums of money into M.J. Select, and to not redeem their investments. (R. 251-1; TAC at ¶¶ 476, 477.) Because Plaintiffs have alleged that they were injured by the Coglianese and Gina Coglianese Defendants' acts and omissions that occurred after they invested in M.J. Select, the Court cannot conclude at this stage that the five-year limitations period commenced when Plaintiffs invested in M.J. Select. Accordingly, the Coglianese and Gina Coglianese Defendants' motion is denied without prejudice as to the accounting malpractice claims.

### D. Illinois Uniform Transfer Act – Counts XVI, XVII and XVIII

Plaintiffs have alleged three violations of the Illinois Uniform Fraudulent Transfer Act ("IUFTA") against Coglianese, Gina Coglianese, CCS, and GLC. 740 ILCS 160/5(a)(1); 740 ILCS 160/5(a)(2); 740 ILCS 160/6(a). "This statute protects against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers which the law considers fraudulent." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

The Coglianese and Gina Coglianese Defendants' entire substantive challenge to Plaintiffs' IUFTA claims is contained in one sentence, unsupported by factual or legal analysis. They argue that "Plaintiffs do not allege how the allege[d] transfers to Sonic and GLC Services Corp. were fraudulent or how the transfers even represented transfers [of] assets of M.J.

Select."[11]  (R. 293-1; Coglianese Defs.' Mot. Dismiss at 22.)  Without more, the Coglianese and

Gina Coglianese Defendants' undeveloped argument is waived.  *See Estate of Moreland*, 395

F.3d at 759.

The Coglianese and Gina Coglianese Defendants also argue that all of Plaintiffs' IUFTA

claims based on transfers made on or before July 29, 1999 are barred by the applicable four year

statute of limitations.  The IUFTA provides that causes of action based on 740 ILCS 160/5(a)(1)

are extinguished unless the action is brought "within 4 years after the transfer was made or the

obligation was incurred or, if later, within one year after the transfer of obligation could

reasonably have been discovered by the claimant."  740 ILCS 160/10(a).  The IUFTA

incorporates the discovery rule into the statute of limitations that applies to 740 ILCS

160/5(a)(1), which "postpones the running of the statute of limitations until a party knew or

should have known his injury was wrongfully caused."  *Fidelity Nat'l Title Ins. Co. of New York

v. Howard Sav. Bank*, No. 02 C 643, 2004 WL 2106610, at *10 (N.D. Ill. Sept. 20, 2004).  The

Court cannot determine at this point when Plaintiffs gained sufficient knowledge to start the

statute of limitations running.  Accordingly, the Coglianese and Gina Coglianese Defendants'

motion is denied without prejudice as to Count XVI.

The IUFTA, however, does not incorporate the discovery rule into the statute of

limitations that applies to 740 ILCS 160/5(a)(2) (Count XVII) and 740 ILCS 160/6(a) (Count

---

[11] On reply, the Coglianese and Gina Coglianese Defendants argue in more depth, still
without the support of case law, that Plaintiffs have failed to plead adequately violations of the
IUFTA because they do not allege that the assets of M.J. Select were actually transferred to the
Coglianese and Gina Coglianese Defendants.  Plaintiffs have alleged that Coglianese, Gina
Coglianese and GLC "were subsequent transferees of assets of M.J. Select Global, Ltd." and that
the assets were transferred through the payment of "illegal secret commissions and fees."  (R.
251-1; TAC at ¶¶ 261, 517.)  Plaintiffs' allegations are sufficient to plead a violation of the
IUFTA.

XVIII).  740 ILCS 160/10(b).  The statute of limitations that applies to Counts XVII and XVIII is four years.  *Id*.  Therefore, all of Plaintiffs' claims based on transfers made before July 30, 1999 are dismissed as to Counts XVII and XVIII.

# CONCLUSION

For these reasons, the Coglianese and Gina Coglianese Defendants' motions to dismiss are granted in part and denied in part. The motions are denied with respect to Counts I (in part), II-A, III, VII, VIII, IX-A, XII, XII-A, XIII, XVI, XVII, and XVIII, and granted with respect to Counts I (in part), II, IV, and XI.

The Court has afforded Plaintiffs four opportunities to plead their case against the Coglianese and Gina Coglianese Defendants. In its previous opinions, both in this case and in the ZCM case, the Court provided Plaintiffs with ample guidance regarding what they must plead to bring viable claims. After four tries, Plaintiffs have not cured all of their pleading deficiencies, even though they have had more than sufficient time and guidance to do so. Rule 15(a) provides that a court should freely grant a party leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a). A court, however, need not provide a plaintiff with that opportunity if the court finds undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility. *Gen. Elec. Capital Corp.*, 128 F.3d at 1085. Here, Plaintiffs have had four opportunities to plead their case, and detailed notice of their pleading deficiencies. Therefore, Counts I (in part), II, IV, and XI are dismissed with prejudice.

Dated: November 7, 2005                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge