IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN H. WALDOCK, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 5293 |
| | ) | |
| v. | ) | |
| | ) | |
| M.J. SELECT GLOBAL, LTD., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs have filed a Third Amended Complaint ("TAC") against multiple Defendants alleging a fraudulent investment scheme in connection with the purchase of shares of M.J. Select Global, Ltd. ("M.J. Select"), a Bahamian mutual fund. Plaintiffs have sued Defendants Landmark Management, S.A.M. ("Landmark") and John Caseley ("Caseley"), (collectively, the "Landmark Defendants"). Additionally, Plaintiffs have sued Oceanic Bank and Trust Limited ("Oceanic"), Terah Rahming ("Rahming") and Kenneth Clowes ("Clowes"), (collectively, the "Oceanic Defendants"), and others for losses resulting from their investments in M.J. Select. The Landmark Defendants[1] and Oceanic Defendants move to dismiss all of the federal and state claims against them for failure to state a claim. As discussed below, their motions are granted in

---

[1] The Landmark Defendants assert that they seek to "adopt all pertinent arguments made by their co-defendants in their motions to dismiss." (R. 287-1; Landmark Defs.' Mot. Dismiss at 25.) The Landmark Defendants do not indicate what arguments they would like to adopt or which Defendants made those arguments. The Court, therefore, denies the Landmark Defendants' request, and will address only the arguments contained in their motion to dismiss. *See Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1100 n.2 (N.D. Ill. 2004) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in the briefs.")).

part and denied in part.

## BACKGROUND

### I.     Plaintiffs

Plaintiffs in this case invested in M.J. Select and lost all or substantial portions of their investments.  Plaintiffs include: John H. Waldock, solely as Trustee of the John H. Waldock Trust; Mary Jane S. Hill and John E. Rosino, solely as Trustees of the Andrew W. Waldock Trust, John H. Waldock, Jr. Trust, Julia Wright Waldock Trust, Cameron Douglas Waldock Trust, Gary Phillip Liebenthal, II Trust, Samuel Louis Waldock Trust, Benjamin Nicholas Waldock Trust, Dustin J. Houck Trust, Daniel R. Houck Trust, Erik J. VanDootingh Trust, Ian A. VanDootingh Trust, John H. Waldock, III Trust, Andrew W. Waldock, Jr. Trust, Christopher J. Waldock Trust; 766347 Ontario Ltd., a Canadian Corporation; the James Boughner Foundation, a Canadian corporation; Ed Pettegrew, Sr., a citizen of Florida; David Miller, a citizen of California; John A. Copeland, as Trustee under a trust agreement dated April 18, 1988; Jack C. Kenning and Barbara Straka-Kenning, citizens of Ohio; Robert M. Warner, Sr. individually and as beneficiary of Independent Trust Corporation Trust, for Adam Scott Warner and for Andrew Robert Warner, Account No. 180 in the name of Robert Warner, Account No. 263 in the name of Adam S. Warner and Account No. 264 in the name of Andrew Robert Warner; and George Lukas, a citizen of New Jersey.  Collectively, these individuals are referred to as "Plaintiffs."  (R. 251-1, TAC at ¶¶ 16-45.)

### II.    The Landmark Defendants

Landmark is a corporation with its principal place of business in Monte Carlo, Monaco. (*Id*. at ¶ 83.)  Landmark operates and administers Global Arbitrage Development, Ltd. ("GAD"), which is an unregistered open-end investment company/mutual fund.  (*Id*. at ¶¶ 80, 83.)  Caseley,

a domiciliary and citizen of Monaco, is or was a director and principal of Landmark. (*Id.* at ¶ 85.)

## III. The Oceanic Defendants

Oceanic is a bank and trust company that has its principal offices in the Bahamas. (*Id.* at ¶ 47.) Oceanic acquired New World Trustees Limited ("New World"), effective May 1, 1998. (*Id.*) Oceanic and New World merged under the name of Oceanic Bank and Trust Limited, effective December 31, 1999. (*Id.*) Rahming, a resident, domiciliary and citizen of the Bahamas, was an officer and employee of Oceanic. (*Id.* at ¶ 49.) In 1997, Oceanic appointed Rahming as its Manager of Fund Services. (*Id.*) Rahming was also a director of M.J. Select, and administered its affairs. (*Id.*) Additionally, Rahming is a graduate of Florida Memorial College and licensed as a certified public accountant by the Board of Accountancy of the State of Colorado. (*Id.*) Clowes, a resident, domiciliary and citizen of the Bahamas, was the Chief Operating Officer of Oceanic. (*Id.* at ¶ 50.) Clowes also served as a director of M.J. Select, and administered its affairs. (*Id.*)

## IV. Alleged Scheme

The Court has set forth the alleged fraudulent scheme in other opinions in this case and its related case, *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, (the "*ZCM* Case"). The Court will not restate the facts in detail here. For a complete factual background, *see Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087 (N.D. Ill. 2004) (the "August 2, 2004 Opinion"); *Zurich Capital Markets Inc. v. Coglianese*, 388 F. Supp. 2d 847 (N.D. Ill. 2004) (the "September 22, 2004 Opinion"); *Waldock v. M.J. Select Global, Ltd.*, No. 03-5239, 2004 WL 2278549 (N.D. Ill. Oct. 6, 2004) (the "October 6, 2004 Opinion"); *Zurich Capital Markets Inc. v. Coglianese*, No. 03-7960, 2005 WL 1950653 (N.D. Ill. Aug. 12, 2005) (the "August 12, 2005

Opinion"); *Waldock v. M.J. Select Global, Ltd.*, No. 03-5239, 2005 WL 2737502 (N.D. Ill. Oct. 24, 2005) (the "October 24, 2005 Opinion"); and *Waldock v. M.J. Select Global, Ltd.*, No. 03-5239, 2005 WL 2978895 (N.D. Ill. Nov. 7, 2005) (the "November 7, 2005 Opinion").

Plaintiffs allege that they lost approximately $9.8 million through a complex fraudulent investment scheme carried out by all Defendants in this case, including the Landmark and Oceanic Defendants. (R. 251-1, TAC at ¶ 12.) They contend that Michael Coglianese ("Coglianese") and other Defendants organized M.J. Select, (*id.* at ¶ 277(c)), Oceanic was the administrator of M.J. Select, (*id.* at ¶ 47), and Rahming and Clowes served as directors of M.J. Select. (*Id.* at ¶¶ 49, 50.) Plaintiffs allege that Defendants used false and misleading offering memoranda and marketing materials to induce Plaintiffs to invest in M.J. Select. (*Id.* at ¶ 9.) Plaintiffs further allege that Defendants falsely represented that M.J. Select invested in liquid investments and that investors could redeem their investments upon fifteen days notice. (*Id.* at ¶ 10.) According to Plaintiffs, Defendants transferred their investments to foreign entities that then placed Plaintiffs' investments into illiquid investments. (*Id.*) Specifically, they contend that certain Defendants directed the transfer of Plaintiffs' investments in M.J. Select into GAD. (*Id.* at ¶¶ 152, 220-25.) Landmark operated and administered GAD, and Caseley was a director and principal of GAD. (*Id.* at ¶¶ 83, 85.) GAD, in turn, allegedly used Plaintiffs' money to invest in Dominion Capital Fund Limited ("Dominion"), a fund that purchased illiquid securities, even though M.J. Select's offering memoranda represented that its investments would be placed in liquid, market neutral securities that its investors could redeem on fifteen days notice. (*Id.* at ¶ 165(a).)

## ANALYSIS

## I.      Legal Standard

4

The Landmark and Oceanic Defendants bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## II.     Federal Securities Fraud Claims – Count I

Count I is premised on a violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.

### A.     Statute of Repose

Both the Landmark and Oceanic Defendants argue that many of Plaintiffs' claims under Count I are time-barred.[2] For the reasons set forth in the Court's Order dated December 7, 2004, (R. 190-1, Dec. 7, 2004 Order at 6), and the November 7, 2005 Opinion, *Waldock*, 2005 WL 2978895, at *3, with the exception of the August 14, 2000 purchase as to John Copeland and the June 1, 2000 purchase as to Jack C. Kenning and Barbara Straka-Kenning, Plaintiffs' Section 10(b) and 20(a) claims are time-barred. Accordingly, the Court will analyze the Landmark and

_____

[2] Plaintiffs assert that under Federal Rule of Civil Procedure 12(g), the Oceanic Defendants may not raise arguments "concerning the applicability of the three-year limitation period that applied before Sarbanes-Oxley was enacted on July 30, 2002" because their previous motion to dismiss did not raise that argument. (R. 337-1, Pls.' Opp'n Oceanic Defs.' Mot. at 14.) Because the Oceanic Defendants previously contested Count I on statute of limitations grounds and because this issue was previously before the Court, Rule 12(g) does not prevent the Oceanic Defendants from asserting this argument.

Oceanic Defendants' remaining arguments to dismiss Count I only as to Copeland, Kenning and Straka-Kenning.

**B.      Section 10(b)**

The Landmark Defendants argue that Plaintiffs have not adequately pleaded a Section 10(b) violation.  The "basic elements" of a Section 10(b) claim include: (1) a material misrepresentation or omission, (2) "scienter, *i.e.*, a wrongful state of mind," (3) a connection with the purchase or sale of a security, (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,'" (5) economic loss, and (6) loss causation.  *Dura Pharms., Inc. v. Broudo*, --- U.S. ----, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005) (citations omitted).

The strict pleading mandates of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq*., apply here.  "The PSLRA creates rules that judges must enforce at the outset of the litigation."  *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 728 (7th Cir. 2004).  The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  Additionally, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

 Furthermore, the heightened pleading requirements of Rule 9(b) apply to the TAC.  Fed. R. Civ. P. 9(b).  Rule 9(b) dictates that a plaintiff plead "the circumstances constituting fraud . . . with particularity."  *In re HealthCare Compare Corp. Sec. Litig*., 75 F.3d 276, 281 (7th Cir. 1996) (citing Fed. R. Civ. P. 9(b)).  According to the Seventh Circuit, "[t]his means the who, what, when, where, and how: the first paragraph of any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

1.    **Whether Plaintiffs Have Alleged a Section 10(b) Violation by the Landmark Defendants through the Purported Agency of Coglianese**

Plaintiffs allege that the Landmark Defendants have violated Section 10(b) through the agency of Michael Coglianese. (R. 251-1, TAC at ¶ 273(c).) An agency relationship results from the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[3] Rest. 2d Agency § 1. "[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant," plaintiff must plead agency with particularity. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Furthermore, the Court has previously explained that

> [t]he mere use of the label "agent" does not sufficiently establish an agency relationship in order to impose liability under Rule 9(b) or the PSLRA where the agency relationship and the fraud claims are intertwined. A plaintiff must plead facts showing the existence and scope of the agency relationship in order to establish primary liability under Section 10(b), especially where, as here, the agency relationship is not based on the classic corporation/employee model where a corporation can only act[] through its employees and agents.

*ZCM*, 332 F. Supp. 2d at 1106; *see also Waldock*, 2005 WL 2737502 at *3.

According to Plaintiffs, the basis for the alleged agency relationship is as follows: (1) Coglianese was an investment advisor for the Landmark Defendants; (2) the Landmark Defendants granted Coglianese the authority to investigate and recommend funds for investment in GAD; (3) Coglianese located investments, such as Dominion, into which he recommended the Landmark Defendants place GAD's funds and assets; and (4) Coglianese received compensation for referring investments to Dominion. (R. 251-1, TAC at ¶¶ 185-89.) Because these agency

---

[3] For the reasons set forth in the August 12, 2005 Opinion, *ZCM*, 2005 WL 1950653, at *3 n.2, and the October 24, 2005 Opinion, *Waldock*, 2005 WL 2737502, at *3 n.3, the Court applies the law of agency from the Restatement in deciding this motion.

allegations are intertwined with Plaintiffs' fraud allegations, Plaintiffs must plead agency with particularity. *See Lachmund*, 191 F.3d at 783; *see also Waldock*, 2005 WL 2737502 at *4.

Plaintiffs have not pleaded with particularity facts alleging the existence of an agency relationship. Plaintiffs have failed to allege, even in a conclusory manner, that the Landmark Defendants had the power to control Coglianese, which is an essential component of an agency relationship. *See* Rest. 2d Agency § 1. Moreover, Plaintiffs concede that their "factual allegations concerning Coglianese's agency for Landmark . . . [are] not as detailed as those against Southridge." (R. 322-1, Pls.' Opp'n Landmark Defs.' Mot. at 4.) On October 24, 2005, the Court held that the Southridge Defendants did not establish an agency relationship with Coglianese. *Waldock*, 2005 WL 2737502, at *4. Accordingly, Plaintiffs have not adequately pleaded the existence of an agency relationship, and the Court will not impute Coglianese's alleged violations of Section 10(b) to the Landmark Defendants.

**2.    Whether Plaintiffs Have Alleged a Section 10(b) Violation by the Landmark Defendants as Principals**

Additionally, Plaintiffs assert that the Landmark Defendants have violated Section 10(b) on their own accord. (R. 251-1, TAC at ¶ 273(c).) The Landmark Defendants argue that Plaintiffs have not adequately pleaded that the they, as principals, committed any Section 10(b) violations. The Court disagrees.

**(a)    Scienter**

The Landmark Defendants argue that Plaintiffs have "fail[ed] to allege scienter with the particularity required by the PSLRA." (R. 287-1, Landmark Defs.' Mot. Dismiss at 4.) The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference

that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). As the Court

has previously held, "a plaintiff may use 'motive and opportunity' or 'circumstantial evidence'

to establish scienter under the PSLRA, so long as Plaintiffs' allegations support a strong

inference that the defendant acted recklessly or knowingly." *766347 Ontario Ltd. v. Zurich*

*Capital Markets Inc.*, 249 F. Supp. 2d 974, 987 (N.D. Ill. 2003) (citations omitted). The

allegations must support a strong inference of scienter as to each Defendant. *Johnson v. Tellabs,*

*Inc.*, 303 F. Supp. 2d 941, 953 (N.D. Ill. 2004).

Plaintiffs' allegations, viewed in the light most favorable to Plaintiffs, support a strong

inference of scienter as to the Landmark Defendants. *See Lee*, 330 F.3d at 459. Plaintiffs have

alleged that the Landmark Defendants "were specifically aware of, or recklessly disregarded,

facts and information from which they knew that the M.J. Select Global, Ltd. offering documents

and other marketing materials were false and materially incomplete." (R. 251-1, TAC at ¶ 177.)

In particular, the Court infers from Plaintiffs' allegations that the Landmark Defendants knew

that M.J. Select's offering memoranda and marketing materials represented that all investments

in M.J. Select would be invested in liquid securities and redeemable within fifteen days. (*Id*. at

¶¶ 179, 180.) According to Plaintiffs, the Landmark Defendants, despite having this knowledge,

submitted to certain Defendants performance figures, track records and monthly financial

information regarding GAD that failed to disclose that GAD invested in illiquid securities. (*Id*.)

The Landmark Defendants allegedly provided this information to these Defendants with the

understanding that it would be included in M.J. Select's offering memoranda and marketing

documents that were sent to Plaintiffs. (*Id*. at ¶¶ 164(a), 168(a).) Additionally, Plaintiffs have

alleged that GAD's redemption policy allowed for the investment in illiquid securities, in direct

conflict with M.J. Select's offering memoranda and other marketing materials. (*Id*. at ¶¶ 156-57,

179(a), 180(a).)  Plaintiffs have further alleged that the Landmark Defendants submitted to Coglianese and other Defendants the following false and materially incomplete statement: "GAD strictly limits their trading activities to arbitrage type trades, or the simultaneous purchase of one instrument and sale of another which produces a locked in profit, with no risk of market direction (market neutral)."  (*Id*. at ¶¶ 179(e), 180(e).)  Lastly, Plaintiffs have alleged that although the Landmark Defendants were aware that Dominion invested in illiquid securities and that M.J. Select's offering memoranda and marketing materials represented that investments in M.J. Select be placed in liquid securities, GAD nevertheless invested Plaintiffs' money in Dominion.  (*Id*. at ¶¶ 165(a), 169(a), 179, 180.)  These allegations create a strong inference of scienter.

### (b)     Duty to Disclose

The Landmark Defendants argue that Plaintiffs have failed to adequately allege that they had a duty to disclose to Coglianese or to M.J. Select that GAD transferred Plaintiffs' investments in M.J. Select into illiquid securities.  A duty to disclose can arise "if omitting particular facts makes some existing statement misleading."  *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001).  Thus, "[i]f one speaks, he must speak the whole truth." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995).  Plaintiffs have alleged that the Landmark Defendants provided allegedly false performance figures, track records and monthly financial information regarding GAD to certain Defendants with the specific understanding that such information would be included in M.J. Select's offering memoranda and marketing documents.  (R. 251-1, TAC at ¶¶ 164, 168.)  According to Plaintiffs, these representations were misleading because the Landmark Defendants did not disclose the true nature of GAD's investments.  These allegations are sufficient to allege a duty to disclose at

10

this stage.

### (c)     Reliance

Lastly, the Landmark Defendants argue that Plaintiffs have failed to allege with the requisite particularity their reliance on the purported misstatements or omissions.  A plaintiff must allege that he or she relied upon the misstatement or omission of material fact and that reliance was the proximate cause of plaintiff's injuries to state a valid Section 10(b) claim.  *In re Healthcare Compare Corp. Secs. Litig.*, 75 F.3d at 280.  Here, Plaintiffs have specifically alleged that they relied on GAD's performance figures and track records, which the Landmark Defendants transmitted to various Defendants on or before November 25, 1994, June 1, 1997, June 10, 1999, and April 1, 2000 for inclusion in M.J. Select's offering memoranda and marketing documents.  (R. 251-1, TAC at ¶¶ 164, 168.)  Additionally, Plaintiffs have alleged that they relied on GAD's monthly profit and loss records, which the Landmark Defendants transmitted to various Defendants each month from 1994 to at least 2001 for inclusion in M.J. Select's offering memoranda and marketing materials.  (*Id*. at ¶¶ 165, 169.)  Plaintiffs have further alleged that they relied on the Landmark Defendants' statement that "GAD strictly limits their trading activities to arbitrage type trades, or the simultaneous purchase of one instrument and sale of another which produces a locked in profit, with no risk of market direction (market neutral)."  (*Id*. at ¶¶ 166, 170.)  These allegations are sufficient to allege reliance at this stage. Therefore, the Court denies the Landmark Defendants' motion to dismiss Count I as to Plaintiffs' Section 10(b) claim.

### C.     Section 20(a)

In order to allege a Section 20(a) claim under the Exchange Act, Plaintiffs must allege: (1) a primary securities violation; (2) each of the individual defendants exercised general control

11

over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised."  *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992).  Plaintiffs' allegations must comply with Rule 9(b)'s particularity mandates because their Section 20(a) claim is based on fraud.  *Johnson*, 303 F. Supp. 2d at 969.  The Landmark Defendants challenge Plaintiffs' Section 20(a) claim for failure to allege with the requisite particularity that they exercised general control over M.J. Select and specific control over the activity upon which Plaintiffs predicate their Section 10(b) action.  The Oceanic Defendants argue that Plaintiffs' Section 20(a) claim fails because Plaintiffs have not alleged that M.J. Select, the entity that Plaintiffs claim the Oceanic Defendants controlled, committed a primary securities law violation.

### 1.    The Landmark Defendants

Regarding "general control" under Section 20(a), Plaintiffs must plead that the Landmark Defendants "actually participated in, that is, exercised control over, the operations of [M.J. Select] in general."  *Harrison*, 79 F.3d at 881.  "While mere allegations of titles are insufficient to state a claim for control person liability under Section 20(a) . . . allegations of both title and responsibilities may be sufficient to establish control."  *ZCM*, 2005 WL 1950653, at * 6 (citations omitted).

In support of their Section 20(a) claim against the Landmark Defendants, Plaintiffs have alleged that GAD had "control over the trading of all investments and other funds into which the investments of plaintiffs and other investors deposited into M.J. Select Global, Ltd." by virtue of its position as "trading advisor" of M.J. Select.  (R. 251-1, TAC at ¶ 152.)  Plaintiffs have further alleged that Landmark controlled M.J. Select's assets "[a]s the Administrator of GAD," and

Caseley controlled M.J. Select's assets as a "principal and Director of both GAD and Landmark." (*Id*. at ¶¶ 153-54.) Plaintiffs also allege that the Landmark Defendants "prepar[ed] for dissemination to plaintiffs and others the false and materially incomplete performance and track records of GAD for inclusion in M.J. Select Global, Ltd. offering memorandums and other marketing documents." (*Id*. at ¶ 181.) Additionally, Plaintiffs allege that the Landmark Defendants "were at all times relevant hereto each a 'controlling person' of M.J. Select Global, Ltd. within the meaning of Section 20(a) of the 1934 Act."[4] (*Id*. at ¶ 279(a).)

These allegations are insufficient to allege "general control." Plaintiffs have pleaded no allegations establishing that the Landmark Defendants participated in or exercised general control over M.J. Select. Instead, Plaintiffs' general allegations that the Landmark Defendants provided information to M.J. Select and had control over investments that M.J. Select transferred to GAD only show that the Landmark Defendants had business dealings with M.J. Select. *See Johnson*, 303 F. Supp. 2d at 969-970 (holding that plaintiffs failed to plead general control). Moreover, Plaintiffs' conclusory allegation that the Landmark Defendants were control persons within the meaning of Section 20(a) does not comply with Rule 9(b)'s particularity requirements. *See id*. at 969. Because Plaintiffs have failed to adequately allege general control, the Court need not address whether Plaintiffs have adequately alleged specific control. For these reasons, the Court grants the Landmark Defendants' motion as to Plaintiffs' Section 20(a) claim.

### 2.      The Oceanic Defendants

The Oceanic Defendants argue that Plaintiffs have failed to establish control person

---

[4] Plaintiffs also allege that the Landmark Defendants are liable under Section 20(a) through the agency of Coglianese. This purported agency relationship, however, cannot serve as the basis for Plaintiffs' Section 20(a) claim because, as addressed earlier, Plaintiffs have failed to adequately allege the existence of such a relationship.

liability because they have not alleged with particularity a primary securities violation by M.J. Select. The Court disagrees. Plaintiffs have pleaded sufficient allegations to allege that M.J. Select violated the Exchange Act. For example, Plaintiffs have alleged the following: (1) M.J. Select's prospectuses and marketing material dated June 1, 1997, June 10, 1999 and April 1, 2000 were "false, misleading and materially incomplete" because they "falsely described the investment program to be followed and falsely identified the person who would control and implement the investment decisions," (R. 251-1, TAC at ¶ 9); (2) M.J. Select "illegally operated in the United States by the solicitation and sale of investment shares based on false and materially misleading solicitations," (*id*. at ¶ 46); (3) Plaintiffs relied on M.J. Select's disclosure documents, (*id*. at ¶¶ 10, 253-54); (4) "the proceeds of the fraudulent sales were misappropriated and secretly funneled through a series of foreign entities" in violation of M.J. Select's offering materials and oral statements, (*id*. at ¶ 10); and (5) "[t]he purpose and effect of the illegal, unregistered and fraudulent sale of the investments and the misappropriation of the proceeds thereof was at least in part to generate exorbitant commissions and fees," (*id*. at ¶ 11). Therefore, viewing the Complaint as a whole and in the light most favorable to Plaintiffs, Plaintiffs have adequately alleged that M.J. Select committed a primary securities violation. Moreover, for the reasons set forth in the October 6, 2004 Opinion, Plaintiffs have sufficiently alleged both general and specific control on behalf of the Oceanic Defendants. *ZCM*, 388 F. Supp. 2d at 866-67; *Waldock*, 2004 WL 2278549 at *4. The Court, therefore, denies the Oceanic Defendants' motion to dismiss Plaintiffs' Section 20(a) claim.

## III.     Investment Company Act of 1940 – Counts II and II-A

Counts II and II-A seek rescission and recovery of damages pursuant to Sections 7(d), 47 and 48(a) of the Investment Company Act of 1940 ("ICA"). 15 U.S.C. §§ 80a-7, 80a-46, 80a-

47. Section 7(d) of the ICA provides that

> No investment company, unless organized or otherwise created under the laws of the United States or of a State . . . shall make use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, to offer for sale, sell, or deliver after sale, in connection with a public offering, any security of which such company is the issuer.

15 U.S.C. §80a-7(d).

## A.    Count II

Plaintiffs have repleaded Count II, which the Court dismissed as to the Landmark Defendants on November 1, 2004, (R. 186-1, Nov. 1, 2004 Order), and as to the Oceanic Defendants on October 6, 2004, *Waldock*, 2004 WL 2278549, at *5. Plaintiffs do not move for reconsideration of the Court's rulings. Therefore, for the reasons set forth in the Court's November 1, 2004 Order and October 6, 2004 Opinion, the Court dismisses Count II as to the Landmark and Oceanic Defendants.

## B.    Count II-A

In the TAC, Plaintiffs have added Count II-A, which is an additional cause of action under the ICA. According to Plaintiffs, Count II-A alleges that the Landmark and Oceanic Defendants are liable under the ICA as "controlling persons" under Section 48(a) of the ICA. (R. 322-1, Pls.' Opp'n Landmark Defs.' Mot. at 7); (R. 337-1, Pls.' Opp'n Oceanic Defs.' Mot. at 20). Section 48(a) of the ICA states:

> It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder.

15 U.S.C. § 80a-47(a). The Oceanic Defendants argue that the Court should dismiss Count II-A because there is no private right of action under Section 48(a), and because the applicable statute

of limitations bars Plaintiffs' claim. The Landmark Defendants do not question the existence of a private right of action under Section 48(a), and instead challenge Count II-A on sufficiency and statute of limitations grounds. The Court will address first the Oceanic Defendants' argument that no private right of action exists to enforce Section 48(a).

The Supreme Court has made clear that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519, 149 L. Ed. 2d 517 (2001). In *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432-36 (2d Cir. 2002), the Second Circuit, following the reasoning set forth in *Alexander*, found that no private right of action exists to enforce Sections 26(f) and 27(i) of the ICA. In *DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708, 714-15 (N.D. Ill. 2005), the Court relied on the analysis set forth in *Olmsted* to find that Section 17(j) of the ICA does not contain a private right of action. Here, the Court looks to the reasoning set forth in *Alexander* and *Olmsted* to determine whether a private right of action exists under Section 48(a) of the ICA.

To determine whether a private right of action exists, the Court begins "with the text and structure" of the statute. *Alexander*, 532 U.S. at 288, 121 S. Ct. at 1520. *See also Exxon Mobil Corp. v. Allapattah Services, Inc.*, --- U.S. ----, ----, 125 S.Ct. 2611, 2620, 162 L.Ed.2d 502 (2005). The text of Section 48(a) does not explicitly provide a private right of action. Nor does Section 48(a) contain rights-creating language. Section 48(a) only describes the actions that are prohibited, it does not reference the individuals that its seeks to protect. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id.* at 289, 121 S. Ct. at 1521 (citing *California v. Sierra Club*, 451 U.S. 287, 294, 101 S. Ct. 1775, 1779, 68 L. Ed. 2d 101 (1981)).

Next, the Court examines whether the ICA provides for enforcement of its provisions

other than through a private right of action because "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander*, 532 U.S. at 290, 121 S. Ct. at 1521-22. Indeed, "[s]ometimes the suggestion is so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute . . . suggest the contrary." *Id.* at 290, 121 S. Ct. at 1522. The ICA does provide for the enforcement of its provisions other than through a private right of action. As the Second Circuit recognized in *Olmsted*, "§ 42 of the ICA (15 U.S.C. § 80a 41) explicitly provides for enforcement of all ICA provisions . . . by the Securities and Exchange Commission . . . through investigations and civil suits for injunctions and penalties." 283 F.3d at 433.

Finally, the Court looks to whether Congress explicitly provided for a private right of action to enforce other provisions of the ICA, as "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional." *Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S. Ct. 2479, 2487, 61 L. Ed. 2d 82 (1979) ("Obviously . . . when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.")). Here, in contrast to § 48(a), "Congress explicitly provided in § 36(b) of the ICA for a private right of derivative action for investors in regulated investment companies alleging that investment advisors breached certain fiduciary duties." *Olmsted*, 283 F.3d at 433.

All of the *Olmsted* factors, taken together, indicate that Section 48(a) does not create a private right of action.[5] Moreover, *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d

---

[5] Plaintiffs, in opposition to the Oceanic Defendants' argument that no private right of action exists, provide the Court with only two sentences of analysis and citation to six cases. The cases upon which Plaintiffs rely were decided before *Alexander*, when "courts had more latitude to weigh statutory policy and other considerations than they do now." *Olmsted*, 283

222 (S.D.N.Y. 2005), lends support for this finding. The *Eaton Vance* court, relying on

*Alexander* and *Olmsted*, found that "[t]he absence of rights-creating language, the existence of

an alternative method of enforcement, and the existence of an explicit private right of action for

another provision of the statute creates the strong presumption that Congress did not intend to

create private rights of action under § . . . 48(a)." *Eaton Vance*, 380 F. Supp. 2d at 232. The

Court, therefore, dismisses Count II-A as to all Defendants on the basis that Section 48(a)

contains no private right of action.[6]

## IV.     State Law Claims

### A.     Standing

Both the Landmark and Oceanic Defendants challenge Plaintiffs' standing to bring

certain claims. The Landmark Defendants argue that under the Illinois shareholder loss rule,

Plaintiffs do not have standing to assert their unjust enrichment claim. The Oceanic Defendants

assert that the Illinois shareholder loss rule bars all of Plaintiffs' state law claims. The Oceanic

Defendants further argue that the Bahamian no reflective loss rule governs the issue of

---

F.3d at 434. Indeed, "[p]ast decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an '*ancien regime*.'" *Id.* (citing *Alexander*, 532 U.S. at 287, 121 S. Ct. at 1520 (internal citations omitted)). *See also Exxon Mobil Corp.,* 125 S.Ct. at 2620. Plaintiffs' cases, therefore, do not indicate that a private right of action exists. Moreover, it is noteworthy that Plaintiffs, in a separate section of their response brief, rely on *Olmsted* for the proposition that "there are no implied private rights of action in the ICA." (R. 337-1, Pls.' Opp'n Oceanic Defs.' Mot. at 16.)

[6] Because the Court concludes that no private right of action exists to enforce Section 48(a) of the ICA, the Court need not address the Landmark and Oceanic Defendants' sufficiency and statute of limitations arguments. Furthermore, although the Coglianese, Gina Coglianese and Landmark Defendants did not properly raise the issue of the existence of a private right of action to enforce Section 48(a) in their motions to dismiss, the Court, *sua sponte*, dismisses Count II-A as to those Defendants.

shareholder standing.[7]

The Oceanic Defendants and Plaintiffs disagree as to what law governs the issue of shareholder standing. The Oceanic Defendants argue that the Bahamian no reflective loss rule applies, while Plaintiffs argue that the Illinois shareholder loss rule applies. The Court addressed this choice of law issue on November 22, 2005. (R. 381-1, Nov. 22, 2005 Order at 2-3.) In its Order dated November 22, 2005, the Court held that Illinois law, the law of the forum state, applies because there is no conflict between the Illinois shareholder loss rule and the Bahamian no reflective loss rule. (*Id.* at 3.) For the reasons stated in the November 22, 2005 Order, the Illinois shareholder loss rule applies.

The Oceanic and Landmark Defendants argue that Plaintiffs lack standing to assert their state law claims under the Illinois shareholder loss rule. The Illinois shareholder loss rule "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 733, 191 Ill. Dec. 317, 319, 623 N.E.2d 907, 909 (2d Dist. 1993) (citations omitted). The Landmark and Oceanic Defendants rely on the Court's December 7, 2004 Order dismissing a number of Plaintiffs' state law claims for lack of standing to support their argument that the Illinois shareholder loss rule bars Plaintiffs' state law claims. (R. 190-1,

---

[7] The Oceanic Defendants argue that the Bahamian no reflective loss rule bars all of Plaintiffs' claims, including their federal claims. Because federal claims arise from federal law, not foreign or state law, the Court will analyze the Oceanic Defendants' argument regarding the applicability of Bahamian law only as to Plaintiffs' state law claims. *See Nelson v. Stewart*, 422 F.3d 463, 467 (7th Cir. 2005) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 2430, 96 L. Ed. 2d 318 (1987) (stating in the preemption context that a federal claim arises from federal law)).

Dec. 7, 2004 Order at 11-12.)  On November 7, 2005, however, the Court addressed the issue of

shareholder standing based on the new allegations in the TAC and Plaintiffs' new arguments.

*Waldock*, 2005 WL 2978895, at *13-15.  In the November 7, 2005 Opinion, the Court found that

"Plaintiffs have sufficiently alleged that M.J. Select acted in equal fault with the other

Defendants."  *Id.* at *15.  Therefore, in accordance with the doctrine of *in pari delicto*, the Court

held that Plaintiffs had standing to bring their state law claims against other Defendants.  *Id.* at

*14-15 ("when a corporation acts *in pari delicto*, shareholders have standing to sue the third

parties who injured them").  Here, Plaintiffs argue that because M.J. Select was an allegedly

fraudulent entity involved in the purported fraud, they were the victims of the alleged fraud and

have standing to assert their state law claims.  For the reasons set forth in the November 7, 2005

Opinion, Plaintiffs have standing to pursue their state law claims against the Landmark and

Oceanic Defendants.

### B. Illinois Securities Law – Count III

Count III alleges that Landmark[8] and the Oceanic Defendants violated the Illinois

Securities Law of 1953 (the "Act"), 815 ILCS 5/12 & 5/13 (2002).  The Act imposes joint and

several liability on "the issuer, controlling person, underwriter, dealer or other person by or on

behalf of whom said sale was made."  815 ILCS 5/13(A).

### 1. The Landmark Defendants

Plaintiffs have alleged that Landmark, along with other Defendants, "were a group of

persons who acted in concert among themselves and with the other defendants in the offer and

sale of the securities of M.J. Select Global, Ltd., and as such were controlling persons within the

---

[8] Plaintiffs do not allege that Caseley violated the Act.

meaning of Section 2.4 of the Illinois Securities Act, 815 ILCS § 5/2.4." (R. 251-1, TAC at ¶

334.) In their response to the Landmark Defendants' motion to dismiss, Plaintiffs explain that

"although Paragraph 334 is not artfully drawn, it is meant to allege principal liability against

Landmark through the agency of Michael Coglianese."[9] (R. 322-1, Pls.' Opp'n Landmark Defs.'

Mot. at 11.) Plaintiffs, however, have not adequately alleged the existence of an agency

relationship between Landmark and Coglianese. Because Plaintiffs rely exclusively on a theory

of agency to support their claim against Landmark under the Act, the Court grants the Landmark

Defendants' motion to dismiss Count III.


### 2.     The Oceanic Defendants

Plaintiffs have repleaded the same claims under the Act that the Court dismissed on

October 6, 2004 for failure to provide timely notice and for failure to comport with the

applicable statute of limitations. The Oceanic Defendants ask the Court to dismiss those claims

again. In the October 6, 2004 Opinion, the Court dismissed Count III as to Plaintiff David

Miller, and dismissed the Count III claims of Plaintiffs 766347 Ontario Ltd., James Boughner

Foundation, John H. Waldock, Mary Jane S. Hill, and John E. Rosino as they relate to Clowes.

---

[9] The Landmark Defendants, in their opening brief, contest the sufficiency of Count III
on the ground that Plaintiffs have failed to plead sufficient allegations to establish that Landmark
was a controlling person, as defined by the Act. Plaintiffs, in their response brief, explain that
they do not seek to impose liability under the Act on the theory that Landmark was a controlling
person. Instead, Plaintiffs allege liability on the theory that Coglianese was a controlling person
who, as Landmark's agent, sold investments in M.J. Select on Landmark's behalf. Plaintiffs
further argue that the Landmark Defendants' failure to contest Plaintiffs' agency theory of
liability in their opening brief constitutes a waiver. The Court disagrees. Plaintiffs, as they
themselves acknowledge, did not clearly articulate their agency theory of liability in the TAC.
Therefore, the Court will not punish the Landmark Defendants for failing to address a theory of
liability of which they were arguably not on notice.

*Waldock*, 2004 WL 2278549, at *6.  Additionally, the Court held that "[a]ny purchases made

before July 30, 1998 are . . . time-barred."  *Id*.  Plaintiffs concede that the Court's October 6,

2004 ruling controls and do not move for reconsideration.  Therefore, the Court's October 6,

2004 ruling regarding the timeliness of Plaintiffs' claims under the Act stands.

The Oceanic Defendants also argue that they are not liable for the remaining claims

under the Act as controlling persons because "M.J. Select shares do not have voting rights," and

as such, "owning shares in M.J. Select would not permit Oceanic to elect directors."  (R. 300-1,

Oceanic Defs.' Mot. Dismiss at 19.)  The Act defines a "controlling person" as:

> any person offering or selling a security, or group of persons acting in concert in the offer
> or sale of a security, owning . . . such number of outstanding securities of the issuer of
> such security as would enable such person, or group of persons, to elect a majority of the
> board of directors or other managing body of such issuer.

815 ILCS 5/2.4.  In the October 6, 2004 Opinion, the Court held that "[b]ecause Plaintiffs allege

that Oceanic, Rahming and Clowes 'owned beneficially such number of outstanding securities

that enabled them to elect a majority to the board of directors of M.J. Select,' Plaintiffs have

alleged that each of the Oceanic Defendants is a 'controlling person' as defined by the Act."

*Waldock*, 2004 WL 2278549, at *5 (citing 815 ILCS 5/2.4).  In the TAC, Plaintiffs have

repleaded essentially the identical allegations against the Oceanic Defendants that the Court

previously held was sufficient to allege control person liability under the Act.  (*See* R. 251-1,

TAC at ¶ 333.)  Moreover, the Oceanic Defendants' contested assertion that they did not have

the power to elect directors of M.J. Select because M.J. Select's shares purportedly did not

contain voting rights is an issue of fact that the Court will not resolve on a motion to dismiss.

*See Waldock*, 2004 WL 2278549, at *5 ("Defendants' allegations that they did not own any

shares of M.J. Select raise an issue of fact that is not appropriate for the Court to determine at

this stage.").  Therefore, Plaintiffs have sufficiently pleaded that the Oceanic Defendants are liable as controlling persons under the Act.

### C.    Unjust Enrichment – Count VII

Count VII alleges unjust enrichment against the Landmark Defendants.  The Landmark Defendants challenge Plaintiffs' unjust enrichment claim for failure to comply with the heightened pleading requirements of Rule 9(b) or the federal notice pleading test.[10]  For the reasons that follow, Plaintiffs' unjust enrichment claim survives.

The Landmark Defendants argue that the heightened pleading requirements of Rule 9(b) apply to Plaintiffs' unjust enrichment claim, and that Plaintiffs' allegations fail to comply with those requirements.  In making this argument, the Landmark Defendants ignore the Court's previous ruling that "Plaintiffs need only plead unjust enrichment under the federal notice pleading requirements."  *ZCM*, 332 F. Supp. 2d at 1119.  The Court subsequently reaffirmed this holding in the August 12, 2005 Opinion.  *ZCM*, 2005 WL 1950653, at *10 ("[i]n its August 2, 2004 Rule 12(b)(6) ruling the Court held that Rule 8(a) governs Defendants unjust enrichment claims . . . [t]he Court declines to reconsider its previous ruling").  The Court will not revisit this issue.

The Landmark Defendants assert that even if Rule 9(b) does not apply, Plaintiffs' allegations in support of their unjust enrichment claim "fail[] the federal notice pleading test." (R. 287-1, Landmark Defs.' Mot. Dismiss at 17.)  "[F]ederal notice pleading requirements . . . only require Plaintiffs to plead a 'short and plain statement of the claim showing that the pleader

---

[10] Additionally, the Landmark Defendants argue that Plaintiffs lack standing to assert their unjust enrichment claim.  For the reasons stated above, Plaintiffs have standing to assert this claim.

is entitled to relief . . .'" *ZCM*, 332 F. Supp. 2d at 1119 (citing Fed. R. Civ. P. 8(a)(2)). In support of Count VII, Plaintiffs have alleged that the Landmark Defendants "have improperly and unjustly obtained property and assets that properly belong to plaintiffs and which were misappropriated by the illegal conduct" alleged in the TAC. (R. 251-1, TAC at ¶ 389.) Plaintiffs have further alleged that "retention by defendants of that property and assets would be an unjust retention of a benefit by those defendants against the fundamental principles of justice, equity and good conscience." (*Id.* at ¶ 390.) In the August 2, 2004 Opinion, the Court upheld a claim for unjust enrichment based on practically identical allegations. *ZCM*, 332 F. Supp. 2d at 1119. For the reasons set forth in the August 2, 2004 Opinion, the Court denies the Landmark Defendants' motion to dismiss as to Plaintiffs' unjust enrichment claim.

### D.      Equitable Accounting – Count VIII

The Landmark Defendants challenge Plaintiffs' entitlement to the award of an equitable accounting. To allege the remedy of an equitable accounting, Plaintiffs "must allege the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 501, 501 N.E.2d 188, 190, 103 Ill. Dec. 167, 169 (1st Dist. 1986). Plaintiffs have alleged that they do not have an adequate remedy at law. Additionally, the Court holds that Plaintiffs have sufficiently alleged against the Landmark Defendants a securities fraud claim under Section 10(b) of the Exchange Act and a common law fraud claim. Furthermore, in the October 6, 2004 Opinion, the Court upheld Plaintiffs' request for an equitable accounting. *Waldock*, 2004 WL 2278549, at *6 (noting that "[c]ourts have broad discretion to determine whether an equitable accounting is warranted"). For these reasons, and for the reasons set forth in the October 6, 2004 Opinion, the

Court denies the Landmark Defendants' motion to dismiss as to Count VIII.

### E. Breach of Contract – Counts IX and X

The Oceanic Defendants seek to dismiss Counts IX and X. Count IX is a breach of contract claim premised on the subscription agreements Plaintiffs executed in accordance with M.J. Select's offering memorandum. Count X is a breach of contract claim premised on a third-party beneficiary theory under the Administration, Registrar & Transfer Agency Agreement between Oceanic and M.J. Select. To state a breach of contract claim, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) plaintiff's performance in accordance with the contract; (3) defendant's breach of the contract; and (4) damages as a result of the breach. *D.S.A. Fin. Corp. v. County of Cook*, 345 Ill. App. 3d 554, 559, 801 N.E.2d 1075, 1079, 280 Ill. Dec. 130, 134 (1st Dist. 2003) (citations omitted).

#### 1. Count IX

In Count IX, Plaintiffs allege that they entered into subscription agreements pursuant to M.J. Select's offering documents, and that the Oceanic Defendants were "counter-parties" to the subscription agreements and breached their obligations thereunder. (R. 251-1, TAC at ¶¶ 402, 408, 412-13.) The Court dismissed Count IX without prejudice on October 6, 2004. *Waldock*, 2004 WL 2278549, at *7. After reviewing the subscription agreements, the Court held that "Oceanic is not a party to the subscription agreements, and Plaintiffs have not alleged any other basis to support their breach of contract claim." *Id*. The Oceanic Defendants request that the Court again dismiss Count IX for the reasons set forth in the October 6, 2004 Opinion. Plaintiffs respond that "a corporate officer can be held personally liable for contractually incurred corporate obligations if the corporate officer [was] fraudulently involved in the wrongdoing leading to a plaintiff's loss." (R. 337-1, Pls.' Opp'n Oceanic Defs.' Mot. at 22.) The two cases

to which Plaintiffs cite in support of this proposition, however, do not address holding an officer or a director of a corporation liable for breach of contract.  Indeed, *National Acceptance Co. of Am. v. Pintura Corp.*, 94 Ill. App. 3d 703, 418 N.E.2d 1114, 50 Ill. Dec. 120 (2d Dist. 1981), states that "[a]lthough a corporate officer is not generally liable for breach of contract, his status does not shield him from liability for tortious acts from which the breach proximately resulted." 94 Ill. App. 3d at 707, 418 N.E.2d at 1117, 50 Ill. Dec. at 123.  Therefore, Plaintiffs have not provided the Court with a viable basis to support a breach of contract claim against the Oceanic Defendants, who were not parties to the subscription agreements.  For these reasons, and for the reasons set forth in the October 6, 2004 Opinion, the Court grants the Oceanic Defendants' motion to dismiss Count IX.

### 2.    Count X

Count X alleges that Oceanic breached the Administration, Registrar & Transfer Agency Agreement it entered into with M.J. Select for the benefit of M.J. Select investors.  (R. 251-1, TAC at ¶¶ 431-39.)  The Oceanic Defendants move to dismiss Count X on the ground that Bahamian law "does not confer rights or impose obligations on any person except the parties to the contract."  (R. 300-1, Oceanic Defs.' Mot. Dismiss at 20.)  Because the Oceanic Defendants assume that Bahamian law governs the interpretation of the Administration, Registrar & Transfer Agency Agreement without engaging in a choice-of-law analysis, they "have failed to lay the proper ground work for the court to address their argument."  *In re Air Crash Disaster, at Sioux City, Iowa, on July 19, 1989*, No. 90-2255, 1991 WL 268656, at *2 (N.D. Ill. Dec. 4. 1991) (addressing defendants' failure to conduct a choice-of-law analysis); *see also See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

authority, are waived.").  The Court, therefore, denies the Oceanic Defendants' motion to dismiss Count X.

### F.      Conspiracy to Defraud – Count XII

Count XII alleges a conspiracy to defraud against the Landmark Defendants, Oceanic and Rahming.  To state a claim for conspiracy to defraud in Illinois, Plaintiffs must allege: "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud."  *Bosak v. McDonough*, 192 Ill. App. 3d 799, 803, 549 N.E.2d 643, 646, 139 Ill. Dec. 917, 920 (1ˢᵗ Dist. 1989).

### 1.      The Landmark Defendants

Plaintiffs have sufficiently alleged a conspiracy to defraud against the Landmark Defendants.  As discussed in connection with Counts I and XII-A, Plaintiffs, in pleading their fraud allegations, have complied with Rule 9(b).  Moreover, Plaintiffs have alleged that certain Defendants, including the Landmark Defendants, "knowingly and intentionally conspired, between and among themselves, with M.J. Select Global, Ltd., Martin James Allamian and Martin James Capital Management, Inc. and with others unknown to plaintiffs, to defraud plaintiffs."  (R. 251-1, TAC at ¶ 459.)  Plaintiffs have also alleged numerous facts demonstrating the Landmark Defendants' knowledge and involvement in the purported fraud.  (*See, e.g., id*. at ¶¶ 159, 164-173, 175-177, 179-180.)  These facts constitute circumstantial evidence of the existence of a conspiracy.  *See State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *20 (N.D. Ill. May 11, 2000) ("Because a conspiracy by nature is secretive, direct evidence is rarely available, and therefore a plaintiff is entitled to prove a conspiracy by circumstantial evidence.").  For these reasons, the Court denies the Landmark Defendants' motion to dismiss as to Count XII.

27

### 2.    Oceanic and Rahming

The Court has already held that Plaintiffs have pleaded their claim for conspiracy to defraud against Oceanic.  *Waldock*, 2004 WL 2278549, at \*7 ("Count XII pleads a conspiracy to defraud case against Defendant Oceanic"); *see also ZCM*, 383 F. Supp. 2d at 1051-52 ("the Oceanic Defendants' motion to dismiss ZCM's conspiracy to defraud allegations fails").  As to Plaintiffs' claim of conspiracy to defraud against Rahming, Plaintiffs assert that "the allegations against Ms. Rahming are nearly identical to those already sustained against Oceanic."  (R. 337-1, Pls.' Opp'n Oceanic Defs.' Mot. at 23.)  The Court agrees.  Therefore, for the reasons set forth in the October 6, 2004 and August 22, 2005 Opinions, the Court denies the Oceanic Defendants' motion to dismiss Count XII.

### G.    Common Law Fraud – Count XII-A

Count XII-A alleges a common law fraud claim against the Landmark Defendants,[11] Oceanic and Rahming.  The Landmark and Oceanic Defendants argue that the Court should dismiss Count XII-A for failure to meet the heightened pleading requirements of Rule 9(b).  "The elements of a claim for fraud in Illinois are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5)

---

[11] Count XII-A alleges that the Landmark Defendants committed fraud on their own accord, as principals, and through the agency of Coglianese.  Because Plaintiffs have failed to adequately allege an agency relationship between the Landmark Defendants and Coglianese, the Court analyzes Count XII-A only with respect to Plaintiffs' allegations against the Landmark Defendants as principals.

damage to the other party resulting from such reliance." *ZCM*, 388 F. Supp. 2d at 868 (citations omitted).

### 1.      The Landmark Defendants

The Landmark Defendants argue that Count XII-A "is deficient for the same reasons as Count I." (R. 287-1, Landmark Defs.' Mot. Dismiss at 23.) The Court, however, does not dismiss Count I because Plaintiffs have adequately alleged a violation of Section 10(b) of the Exchange Act. Therefore, for the reasons stated above, Count XII-A stands.

### 2.      Oceanic and Rahming

On September 22, 2004, the Court upheld ZCM's common law fraud claim against the Oceanic Defendants. *ZCM*, 388 F. Supp. 2d at 868. The Oceanic Defendants ignore the Court's holding in the *ZCM* case and argue that the Court should dismiss Count XII-A because Plaintiffs "impermissibly lump together 15 defendants and the fraud allegations against those defendants." (R. 300-1, Oceanic Defs.' Mot. Dismiss at 22.) The Court disagrees. Plaintiffs have pleaded specific allegations identifying Oceanic's and Rahming's involvement in the alleged fraud. (*See*, *e.g.*, R. 251-1, TAC at ¶¶ 122, 123, 126, 138, 140-48, 283, 466(b).) The Oceanic Defendants further assert that because they "only forwarded Coglianese's statements to shareholders," Plaintiffs fail to adequately allege the first element of a claim for fraud, a false statement of material fact. (R. 300-1, Oceanic Defs.' Mot. Dismiss at 22.) The Oceanic Defendants, however, do not cite any cases in support of their theory that a defendant must physically create the allegedly false statements of material fact to be liable for fraud. The Seventh Circuit has repeatedly "made clear that . . . arguments that are unsupported by pertinent authority[] are waived." *See Berkowitz*, 927 F.2d at 1384; *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7ᵗʰ Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). Moreover, in

*Renovitch v. Kaufman*, 905 F.2d 1040 (7th Cir. 1990), the Seventh Circuit suggested that distribution of false statements of material fact is sufficient to establish the first element of a common law fraud claim. In *Renovitch*, the Seventh Circuit found that plaintiffs failed to establish that defendants made any false statements of material fact because defendants had not "prepared, authorized, or *distributed* the brochures [that contained several misrepresentations]." 905 F.2d at 1049 (emphasis added). For these reasons and the reasons set forth in the September 22, 2004 Opinion, the Court denies the Oceanic Defendants' motion to dismiss Count XII-A.

**H.      Illinois Uniform Fraudulent Transfer Act – Counts XVI, XVII and XVIII**

Plaintiffs have alleged three causes of action against the Landmark and Oceanic Defendants under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). According to Plaintiffs, the Landmark and Oceanic Defendants violated Sections 5(a)(1) (Count XVI), 5(a)(2) (Count XVII) and 6(a) (Count XVIII) of the IUFTA. "This statute protects against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers which the law considers fraudulent." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

**1.      Statute of Limitations**

Both the Landmark and Oceanic Defendants argue that Plaintiffs' claims under the IUFTA that are based on investments made prior to July 30, 1999 are barred by the applicable statute of limitations. Plaintiffs, in their response to the Oceanic Defendants' motion to dismiss, concede that the applicable four-year statute of limitations bars transfers made on or before July 30, 1999 as to Counts XVII and XVIII.[12] Indeed, on November 7, 2005, the Court, in resolving

_____

[12] Plaintiffs, in their response to the Landmark Defendants' motion to dismiss, argue that the Landmark Defendants' failure to develop their statute of limitations argument constituted a

other Defendants' motions to dismiss, held that "[t]he statute of limitations that applies to Counts XVII and XVIII is four years . . . [and] all of Plaintiffs' claims based on transfers made before July 30, 1999 are dismissed as to Counts XVII and XVIII." *Waldock*, 2005 WL 2978895, at *17 (citations omitted). The Court, however, denied without prejudice those Defendants' motions to dismiss Count XVI because "[t]he IUFTA incorporates the discovery rule into the statute of limitations that applies to [Count XVI]," and "[t]he Court cannot determine at this point when Plaintiffs gained sufficient knowledge to start the statute of limitations running." *Id.* For the reasons stated in the November 7, 2005 Opinion, the Court dismisses Plaintiffs' claims based on transfers made before July 30, 1999 only as to Counts XVII and XVIII.

### 2. The Landmark Defendants

Additionally, the Landmark Defendants move to dismiss all three causes of action on a variety of other grounds, including that the IUFTA does not apply because Plaintiffs are not "creditors," M.J. Select is not a "debtor," Plaintiffs' investments in M.J. Select are not "debts," and the Landmark Defendants are not "transferees" or "insiders" under the IUFTA. The Landmark Defendants also argue that Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b). In support of these arguments, the Landmark Defendants only cite to two cases – one for the proposition that Rule 9(b) standards apply, and one for the proposition that the alleged transferee must have sufficient knowledge of the purported fraud. Moreover, the Landmark Defendants do not address individually Plaintiffs' three causes of action under the IUFTA. The Landmark Defendants' failure to develop any meaningful factual or legal analysis

waiver. Because this issue was previously before the Court, however, the Court will address it here.

results in a waiver of their arguments challenging Counts XVI, XVII and XVIII.  *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *Estate of Moreland*, 395 F.3d at 759 ("Perfunctory or undeveloped arguments are waived.").

### 3.	The Oceanic Defendants

The Oceanic Defendants also move to dismiss all three of Plaintiffs' IUFTA claims on the ground that "plaintiffs do not allege that Oceanic received any of the alleged fraudulently transferred assets."  (R. 300-1, Oceanic Defs.' Mot. Dismiss at 24.)  This argument assumes that the IUFTA only imposes liability on "transferees" who receive the fraudulently transferred assets.  The Seventh Circuit, however, has recognized that "740 ILCS 160/8 provides the creditor with various equitable remedies for the acts of 'debtors' and 'transferees,'" and that Section 740 ILCS "160/9 permits a money judgment against '(1) the first transferee of the asset or *the person for whose benefit the transfer was made*; or (2) any subsequent transferee other than a good-faith transferee.'" *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 630 (7th Cir. 2002) (citing 740 ILCS 160/8, 9) (emphasis added).  Indeed, even *Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192 (S.D. Tex. 1996), the only case the Oceanic Defendants cite in their opening brief to support their argument, acknowledges that a court can hold liable under the Uniform Transfer Act an individual who benefitted from the transfer.  925 F. Supp. at 1209. Accordingly, at this stage in the case, the Oceanic Defendants' argument that they were not "transferees," without more, does not require the dismissal of Plaintiffs' IUFTA claims.

## CONCLUSION

For these reasons, the Landmark and Oceanic Defendants' motions to dismiss are granted in part and denied in part. The Landmark Defendants' motion is denied with respect to Counts I (in part), VII, VIII, XII, XII-A, XVI, XVII (in part), and XVIII (in part), and granted with respect to Counts I (in part), II, II-A, III, XVII (in part), and XVIII (in part). The Oceanic Defendants' motion is denied with respect to Counts I (in part), III (in part), X, XII, XII-A, XVI, XVII (in part), and XVIII (in part), and granted with respect to Counts I (in part), II, II-A, III (in part),IX, XVII (in part), and XVIII (in part). The Court has afforded Plaintiffs four opportunities to plead their case against the Landmark and Oceanic Defendants. Moreover, the Court has provided Plaintiffs with detailed guidance both in this case and in the *ZCM* case regarding what they must plead to state their claims. Certain pleading deficiencies, however, still remain. Rule 15(a) states that a court should freely grant a party leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a). "A court, however, need not provide a plaintiff with that opportunity if the court finds undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility." *Waldock*, 2005 WL 2978895, at *17 (citing *General Elec. Capital Corp.*, 128 F.3d at 1085). Because the Court has allowed Plaintiffs four opportunities to plead their case and has provided Plaintiffs with detailed notice of their pleading deficiencies, the Court dismisses Counts I (in part), II, II-A, III, XVII (in part), and XVIII (in part) with prejudice as to the Landmark Defendants, and the Court dismisses Counts I (in part),

II, II-A, III (in part), IX, XVII (in part), and XVIII (in part) with prejudice as to the Oceanic

Defendants.


Dated: December 27, 2005                    ENTERED:


                                            _____
                                            AMY J. ST. EVE
                                            United States District Court Judge